CHARLES S. NORRIS, executor, *vs.* CHARLES W. LOOMIS & others.

Middlesex. March 28, 1913. — June 18, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Charity. Trust,* Charitable.

A widow by her will devised her former residence "for an Old Folks Home, both male and female, of Evangelical Creed." She bequeathed the proceeds from the sale of another house and certain bank deposits for the purpose of carrying on this Old Folks Home, designating it by her family name and by the number and street of the house intended for it. She expressed a desire that a certain woman should have a home there whenever she wished. The house given was not suitable for an old folks' home and the entire property devoted to the home by the will was about $23,000, which was insufficient for the purpose. It was uncertain how much money would be required and how long the fund given would have to be held to produce by accumulation the sum necessary for the purpose. *Held,* that the gift was one for a·charitable use; that the will manifested a general charitable intent to found an old folks' home and that the gift was not so limited to the particular building or place as to disclose an intention that it should not be applied elsewhere, and therefore that a scheme should be devised for the administration of the trust according to the doctrine of *cy pres.*

BILL IN EQUITY, filed in the Probate Court for the county of Middlesex on May 23, 1912, by the executor of the will of Frances F. Tabor for instructions.

On appeal, the case came on to be heard before *De Courcy,* J., who reserved it upon the pleadings and an agreed statement of facts for determination by the full court.

Frances F. Tabor was a widow. She died on December 26, 1909, leaving as her only heirs at law and next of kin thirteen first cousins. Her will was dated May 1, 1902. A codicil, in which she ratified the will except as to the appointment of executors, was dated December 19, 1909.

The first provisions of the will were the following:

"I give my present residence, 4 Lewis Ave. Arlington, Mass. for an Old Folks Home, both male and female, of Evangelical Creed, most of the furnishings of the said House to go with the House and Land of said Estate for the use of the Old Folks.

"I give the house and Land 14 Prospect, St. Malden, Mass. for

to be sold for funds to carry on the Old Folks Home. If it should be sold previous, then the funds received, to be used for the carrying on of the Old Folks Home."

Among the bequests in her will were the following:

"What is in the Five Cent S. Bk. School St. Boston, and also in the Union. S. Bk. 216 Tremont St. Boston and the Wildey S. Bk. 52 Boylston St. Boston, Mass. I give for the carrying on of the Old Folks Home, to be called The Tabor Home, 4 Lewis Ave. Arlington Mass. . . . I give what is in the Arlington. S. Bk. and National, Bk. in Arlington, for the Tabor Old Folks Home. . . . What is in the Malden, Trust Co. after all debts are paid, I give for to carry on the Old Folks Home, as Maud Smith the child I mostly brought up will lose her home by my death, I wish for to have a home whenever she wishes, at the Tabor Old Folks Home."

The other material facts are stated in the opinion.

*A. J. Plummer,* for the plaintiff, stated the case.

*F. W. Fosdick,* for the defendants.

*H. M. Hutchings,* Assistant Attorney General, for the Attorney General.

RUGG, C. J. There is no doubt, under the general principles of charitable trusts, of the validity of the provisions of the will of the testatrix for the establishment of an "Old Folks Home, both male and female, of Evangelical Creed." The relief of the poor of a particular church and the amelioration of the condition of the aged of a specified religious belief is a charitable use. Even though the gift is limited to a certain class, the number to be benefited is indefinite and the purpose has always been regarded as charitable. *Attorney General* v. *Old South Society,* 13 Allen, 474. *Sohier* v. *Burr,* 127 Mass. 221. *Sears* v. *Attorney General,* 193 Mass. 551. *Masonic Education & Charity Trust* v. *Boston,* 201 Mass. 320, 325. *Little* v. *Newburyport,* 210 Mass. 414. The heirs at law rely upon *Troutman* v. *De Boissiere Odd Fellows' Home,* 66 Kans. 1. But we cannot follow that case, which is contrary to our own decisions and the great weight of authority. See cases in 6 Cyc. 924, 925.

The facts are that the house referred to in the will is not suitable in size or arrangement for such a Home as the will of the testatrix contemplated. The entire property devoted to this charity

by the will amounts to about $23,000, which it is agreed is insuf-
ficient to establish and maintain such a Home, "and it is alto-
gether problematical and uncertain how much money would be
required and how long it would take to accumulate the funds nec-
essary for such a purpose." It is therefore impossible at present
to carry out the terms of the will precisely according to the intent
of the testatrix. The questions to be decided are: first, does the
gift fail; second, shall the property be held to accumulate until
sufficient in amount to establish a Home; or third, shall it be
administered according to the doctrine of *cy pres*, or distributed
among the heirs at law of the testatrix. The will is informal,
but on the whole we are inclined to think it manifests a general
charitable intent as to the founding of the Old Folks' Home, and
that it is not so limited to the particular building or place as to
disclose an intention that it be devoted to no other purpose.
It is apparent that the testatrix intended to dispose of her entire
property. She made a large number of specific gifts of articles of
personal property, but most of her estate is given to charitable
objects. The method pursued by her of enumerating deposits in
several different banks as gifts for the support of the Home empha-
sizes the general purpose to benefit such an institution. The dom-
inating design disclosed by the will is the establishment of the
Old Folks' Home. The appropriation of the Arlington house to
that use is rather the incidental than the primary aim. The bene-
ficiaries are not limited to the particular neighborhood, nor are
those of any locality given a preference. The paramount pur-
pose was to establish a Home for the benefit of the general class
designated, with a special provision later in the will that a woman
whom she had "mostly brought up" from childhood should have
a home there whenever she wished. The precise method of ac-
complishing the charitable purpose was not of the essence of the
gift, nor so important in her thought as the general relief of the
dependent class uppermost in her mind. The testatrix's desire
that the Home should bear her name may be accomplished by per-
petuating the name "Tabor" in connection with the framing of a
scheme for the administration of the trust. Although the case
is close upon this point, we incline to the view that it falls within
the class of which *Richardson* v. *Mullery*, 200 Mass. 247, and *Ely*
v. *Attorney General*, 202 Mass. 545, are illustrations. The case

is distinguishable from *Teele* v. *Bishop of Derry,* 168 Mass. 341, *Bowden* v. *Brown,* 200 Mass. 269, and like cases.

The uncertainty as to the time necessary to accumulate funds sufficient to found a Home such as the testatrix had in mind, together with all the other facts disclosed, bring the case within the decision of *Ely* v. *Attorney General,* 202 Mass. 545, and *Grimke* v. *Attorney General,* 206 Mass. 49, to the effect that the funds should not be held for accumulation. The facts in the case at bar are almost identical with those in the two cases cited.

It follows from what has already been said that the funds should be administered according to the doctrine of *cy pres.*

*Decree of Probate Court affirmed.*