CAROLINE S. ROGERS & others, trustees, *vs.* ATTORNEY
GENERAL & others.

Essex.    November 6, 1963. — March 4, 1964.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Trust,* Charitable trust. *Devise and Legacy,* Charitable trust. *Probate
Court,* Case stated, Appeal. *Equity Pleading and Practice,* Case stated,
Appeal. *Words,* "Request."

Where facts admitted in the pleadings, and those contained in a statement
of agreed facts on which a judge of the Probate Court had written "the
facts set forth herein are found to be the facts in the within case," were
all the material facts, there was a case stated, and upon appeal from
the final decree this court could draw any proper inferences and decide
the case unaffected by the decision of the judge.    [130–131]
The will of an elderly, single woman with the surname Johnson, devising
her old family homestead in North Andover in trust "as now owned by
me, to establish a home for aged women of said town, to be called 'The
Johnson Home for Aged Women,'" bequeathing to the trustees a cer-
tain sum "to help support, and finish furnishing the house," stating a
"request" that "no women under sixty-five years of age, or who smokes
or drinks be admitted as a member," giving to the trustees "for said
home" many of its furnishings, and containing no gift over in the event
that the trust should fail although there was a general residuary clause
naming the testatrix's closest relatives as residuary legatees, revealed a
general charitable intent on the part of the testatrix when considered in
the light of its language as a whole and of the circumstances relevant to
the homestead; and, where it appeared many years after the testatrix's
death that the homestead was in nearly total disrepair, that the Johnson
Home had never been established, and that it was impracticable to estab-
lish it because of inadequate funds, the trustees should present a plan
to apply the trust cy pres, with some formal recognition given to the
Johnson family.    [127–128, 132–134]
The will of a woman establishing a trust of the residue to pay at a certain
time memorial legacies to five named charities, one of which was "To
the trustees of the Johnson Home for Aged Women in North Andover,
referred to in the will" of another person which had been proved and
allowed, with no gift over in the event that the Johnson Home should
not have been or could not be established, and ultimately to distribute
the remaining principal equally to four named charities, one of which
was the Johnson Home "should such Home have become a reality in
North Andover . . . or if by receiving said one-fourth . . . [share] it
be possible to establish said Home," and directing the trustee, in the

Rogers *v.* Attorney General.

event that the Johnson Home should not have been or could not be established, to pay that share "to some home for the aged regardless of sex . . . not remote from North Andover . . . to which the aged of North Andover shall have entrance," with "full authority to select such home for the aged as under the circumstances . . . [the trustee] thinks proper," revealed a general charitable intent on the part of the testatrix; and, where it appeared that the Johnson Home had not been and could not be established and that the Johnson trust was to be applied cy pres, the testatrix's memorial legacy to that trust, already paid thereto, must be applied cy pres in the same manner as the rest of that trust, but the testatrix's ultimate gift of one-fourth of the remaining principal to the Johnson Home must go to such home for the aged as the trustee under her will should select in accordance with the provisions thereof.   [128–129, 135–136]

PETITION for instructions filed in the Probate Court for the county of Essex on March 12, 1962.

The case was heard by *Phelan,* J.

*H. Burton Powers* stated the case.

*H. Erik Lund* (*Brooks Potter* with him) for Gardner Sutton & another, executors.

*Henry D. Winslow* (*Frederick H. Free, Jr.,* with him) for Merchants National Bank of New Bedford & another, administrators.

*William B. Welch* for Naumkeag Trust Company, trustee.

*James J. Kelleher,* Assistant Attorney General, for the Attorney General.

KIRK, J.   This is a petition for instructions brought in the Probate Court by the trustees under the will of Catherine Johnson (Catherine) against the Attorney General, the representatives of the residuary legatees under Catherine's will, and the executor and trustee under the will of Sarah L. Phelps (Sarah).   The facts now to be stated are derived from facts admitted in the pleadings and from a statement of agreed facts, indorsed by the judge as findings of fact, which incorporates by reference the wills of Catherine and Sarah.   In her will and codicils, Catherine made a number of bequests and devises to individuals, both relatives and nonrelatives, as well as to specified charities.   To her three closest relatives she gave the residue of her estate generally.   In article SECOND she devised to certain persons ''in trust, my Homestead in said North Andover as now

owned by me, to establish a home for aged women of said town, to be called 'The Johnson Home for Aged Women.' I also give and devise to the said trustees the sum of twenty thousand dollars to help support, and finish furnishing the house.   These Trustees to fill all vacancies in their board, and I request that no women under sixty-five years of age, or who smokes or drinks be admitted as a member.   I do not restrict as to nationality.''   In article ELEVENTH she further provided: ''I give to the before mentioned Trustees of the 'Johnson Home for Aged Women' for said home all carpets, rugs, stoves, books, tables, chairs, bureaus, crockery cooking utensils &c not mentioned in a Memorandum of even date with this will.''   In 1913, four years after making the will, Catherine executed a codicil devising certain land to the ''faithful man on my farm'' and providing that '' [t]he seventeen acres of land on which my house stands, of course goes to the 'Old Ladies Home.' ''

Catherine died a single woman at the age of eighty-six in 1918, nine years after making her will.   The will and codicils were proved and allowed in 1918.   Her brothers and sisters, all childless, had predeceased her.   The homestead, situated on sixteen acres of land, was built 210 years prior to her death by one of her ancestors and has ever since remained in the Johnson family.   ''The Johnson Home for Aged Women'' (Johnson Home) has never been established.   The property is now in nearly total disrepair, and it is impossible or impracticable to establish the home because of the inadequacy of the funds held by the trustees.

Five years after Catherine died, Sarah, who like Catherine had resided in North Andover, executed a will.   She bequeathed certain sums of money to a friend and to a cemetery association for the upkeep of her family lot, and set up a trust of the residue.   The trust provided a fixed income for life to a cousin, the remaining income to go to her brother for life.   The brother had a right, on his request, to use the principal.   Upon her brother's death, legacies were to pass to five named charities, all to be described as memorials to a named aunt and a named uncle.   One of

Rogers v. Attorney General.

these charities was the Johnson Home. The bequest (article FIFTH, paragraph 3) reads: ''To the trustees of the Johnson Home for Aged Women in North Andover, referred to in the will of Kate Johnson, deceased, late of North Andover, the sum of Three Thousand Dollars.'' This money was paid to the Johnson trustees in 1937. The market value of the investment of the money is now in excess of $11,300. After the charities were taken care of, the trustee was authorized to buy a house for Sarah's nephew and his wife.

The remaining income was to be paid to Sarah's nephew, and upon his death to his wife and their children. Upon the death of the last survivor, the principal was to be divided into four equal parts and paid over to four named charities, one being the Johnson Home. The provision relating to the home (article EIGHTH, paragraph 2) reads: ''One-fourth of said trust fund shall be paid to the Johnson Home for Aged Women provided for by the will of Kate Johnson hereinbefore mentioned, should such Home have become a reality in North Andover at said time, or if by receiving said one-fourth . . . it be possible to establish said Home; but if said Home has not been established at said time and if in the opinion of my said Trustee it cannot be properly established upon receiving the one-fourth . . . then I authorize my said trustee to pay the same to some home for the aged regardless of sex, which is situated in some section of Massachusetts not remote from North Andover, preferably away from a city or populous town, to which the aged of North Andover shall have entrance; my said Trustee having full authority to select such home for the aged as under the circumstances it thinks proper.''

In 1925 Sarah died and her will was proved and allowed.

In his answer to the present petition, the Attorney General recommended that the doctrine of cy pres be applied and that the Johnson homestead be sold, the proceeds added to the Johnson trust fund, and the fund given to the Lawrence Home for Aged People. The Lawrence Home, located in Lawrence, Massachusetts, about two and one-half

miles from the Johnson property, was organized in 1895 as a public charitable organization for the purpose of furnishing a home and care for the aged of Lawrence, Methuen, North Andover, and later, of Andover. It has a housing capacity for about thirty individuals and is open to persons sixty years of age and older, of good character and disposition, and of reasonably good health. Since 1953, twenty-four of fifty-six applicants have been admitted. Although no one from North Andover resides there now, fourteen women from that town have been admitted since 1917. Only one North Andover resident has applied for admission in the last ten years. There are other institutions which care for the aged in Andover and Methuen.

The court entered a decree on October 2, 1962, instructing the petitioners (1) not to distribute any of the trust property to the residuary legatees, and (2) to present an appropriate procedure for the administration of the trust in accordance with the doctrine of cy pres. Appeals were duly filed by the trustee under Sarah's will and by the representatives of the residuary legatees under Catherine's will.

Since the pleadings and the statement of facts contain all the material facts upon which the rights of the parties are to be determined, we have before us a case stated. *Caissie* v. *Cambridge,* 317 Mass. 346, 347. We may therefore draw from those facts any inferences that the trial court could have drawn. G. L. (Ter. Ed.) c. 231, § 126. *Hopkins* v. *Hopkins,* 287 Mass. 542, 545. Hence, we decide the questions of law involved unaffected by the decision of the judge or by the decree entered in 1944.[1] *Adams* v. *American Employers Ins. Co.* 292 Mass. 260, 261. *Gar Wood Indus. Inc.* v. *Colonial Homes, Inc.* 305 Mass. 41, 45. *Fiduciary Trust Co.* v. *First Natl. Bank,* 344 Mass. 1, 4. The standard of review is not altered by the fact that the judge, below the signatures of all counsel on the statement of agreed facts,

---

[1] In 1943, the petitioners herein asked the Probate Court for leave to sell the real estate free from all trusts and to add the proceeds thereof to the funds then held by them, and to authorize them to transfer the entire fund, thus augmented, to the town of North Andover for the benefit of aged women in that town in accordance with Catherine's intent. The residuary legatees, asserting the inapplicability of the doctrine of cy pres, opposed the petition. After hearing, the petition was dismissed in 1944.

wrote, ''The facts set forth herein are found to be the facts in the within case.'' ''The case must be dealt with on the footing that all of the evidence that was before the court is contained in the agreed statement of facts.'' *Donahoe* v. *Turner,* 204 Mass. 274, 275.

Since the parties have conceded that it is impossible to comply literally with the terms of the testamentary trust created in Catherine's will, the central issue is whether the trust fund should be applied cy pres or pass to the representatives of the residuary legatees by way of a resulting trust. The basic rule, frequently applied by this court, was stated by Shaw, C.J., in *American Academy of Arts & Sciences* v. *Harvard College,* 12 Gray, 582, 596: ''It is now a settled rule in equity that a liberal construction is to be given to charitable donations, with a view to promote and accomplish the general charitable intent of the donor, and that such intent ought to be observed, and when this cannot be strictly and literally done, this court will cause it to be fulfilled, as nearly in conformity with the intent of the donor as practicable.'' *Sanderson* v. *White,* 18 Pick. 328, 333. *Jackson* v. *Phillips,* 14 Allen, 539, 580. *Osgood* v. *Rogers,* 186 Mass. 238, 241. *Judkins* v. *Hyannis Pub. Library Assn.* 302 Mass. 425, 427. ''But if the charitable purpose is limited to a particular object or to a particular institution, and there is no general charitable intent, then, if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect, and possibly in some cases after it has taken effect, the doctrine of *cy pres* does not apply, and, in the absence of any limitation over or other provision, the legacy lapses.'' *Teele* v. *Bishop of Derry,* 168 Mass. 341, 343. *Holmes* v. *Welch,* 314 Mass. 106, 109–110. *Mackey* v. *Bowen,* 332 Mass. 167, 169–170. To ascertain whether the testatrix manifested a general charitable intent, as distinguished from an intent limited to devoting the property to a specific charitable purpose, we turn to a consideration not only of the language of the applicable provisions of the will and codicils, but also to the language of these instruments as a whole. *Brookline*

v. *Barnes,* 324 Mass. 632, 638–639. We consider also the circumstances relevant to the property involved in the testamentary trust.

Although the clearest indication of a general charitable intent is an express statement of that intent in the will itself (*Jackson* v. *Phillips,* 14 Allen, 539, 540–542, 569; *Grimke* v. *Attorney Gen.* 206 Mass. 49, 50), such a statement is not indispensable in order to determine the existence of a general charitable intent. The absence of an express statement of a general charitable purpose in Catherine's will is therefore not conclusive of the case.

That Catherine had a strong attachment to the family homestead and that she desired its preservation can be inferred from the fact that she had no lineal descendants to whom she could devise her home, which had always been owned by Johnsons, and from the express provisions in the will that the furnishings then present in the house be used in the Johnson Home, and that the home bear the family name. Her dual desire to have the property thus used and to have the family name perpetuated does not foreclose the court from finding a general charitable intent. In the somewhat analogous case of *Norris* v. *Loomis,* 215 Mass. 344, the widowed testatrix, having no lineal descendants, devised her " 'present residence . . . for an Old Folks Home, both male and female, of Evangelical Creed, most of the furnishings of the said House to go with the House and Land of said Estate for the use of the Old Folks.' " The home was to bear her surname. The house not being suitable for such a home and the money not being sufficient to aid in the establishment and maintenance of such a home, this court held that the doctrine of cy pres was applicable.

Similarly, in *Ford* v. *Rockland Trust Co.* 331 Mass. 25, the testator had devised his residence to his brother for life, the remainder to go to the town of Rockland in trust "[t]o be used as a home for aged women." Since it was impracticable or impossible to maintain such a home, this court ordered the benefits of the charity to be made available to the members of the class mentioned in the will, finding that

"the testator had a general charitable intent to benefit the class of persons designated. . . . Undoubtedly the testator believed that the Howard Street property should be used for the contemplated home but we think that the means must have been subordinate in his mind to the end which he had in view." *Ford* v. *Rockland Trust Co.* 331 Mass. 25, 28. The fact that Catherine provided that the homestead be used in carrying out her charitable purpose and the further fact that the homestead cannot now be so used does not prevent the finding of a general charitable intent. See *Weeks* v. *Hobson,* 150 Mass. 377; *Amory* v. *Attorney Gen.* 179 Mass. 89. Furthermore, the direction in a testamentary trust that the surname of the testator be used also does not negative the existence of a general charitable intent. *Norris* v. *Loomis,* 215 Mass. 344, 346. See *Grimke* v. *Attorney Gen.* 206 Mass. 49; *Judkins* v. *Hyannis Pub. Library Assn.* 302 Mass. 425. Compare *Holmes* v. *Welch,* 314 Mass. 106. Although a donor may clearly manifest a desire to have the trust serve as a memorial, the doctrine of cy pres may still apply. Some effort, however, should be made to frame a scheme so as to include, in some appropriate and practical manner, a suitable reference to the donor's family. See *Mackey* v. *Bowen,* 332 Mass. 167, 168; *Grace Episcopal Church of New Bedford* v. *Nichols,* 341 Mass. 736, 737.

The class whom Catherine sought to benefit is narrowly circumscribed and includes only female residents of North Andover who are sixty-five years of age or older; she "request[s]" they neither drink nor smoke. That she has so restricted the class to be benefited does not preclude a finding of a general charitable intent to benefit aged people, generally, who reside in the vicinity of North Andover. Nothing appears in Catherine's will nor in the agreed facts to show an unconditional purpose to exclude from her beneficence aged men from North Andover, or aged persons, generally, from towns other than North Andover, or, indeed, women who drink or smoke. The use of the word "request" as to the latter suggests that the trust should not fail for want of applicants who could not qualify be-

cause they drank or smoked. It is not beyond the scope of the cy pres doctrine that, although members of the defined or special class must be given preference in devising a scheme to dispose of the property cy pres, members of the general class described may also receive the benefits of the trust. *Attorney Gen.* v. *Briggs,* 164 Mass. 561, 569. *Osgood* v. *Rogers,* 186 Mass. 238, 241. Compare *Teele* v. *Bishop of Derry,* 168 Mass. 341, 344–345.

An additional indication of a general charitable intent is the absence of a gift over in the event that the trust should fail. *Brookline* v. *Barnes,* 324 Mass. 632, 639. *Worcester County Trust Co.* v. *Grand Knight of the Knights of Columbus,* 325 Mass. 748, 753. *Mackey* v. *Bowen,* 332 Mass. 167, 171. *Anna Jaques Hosp.* v. *Attorney Gen.* 341 Mass. 179, 182. Compare *Bullard* v. *Shirley,* 153 Mass. 559. Although a general residuary clause serves incidentally a function similar to that served by a provision for a gift over, it cannot here be considered a substitute for a gift over clause. A general residuary clause is a common and prudent provision in a will. Such a provision supplies designated beneficiaries for undevised or after-acquired property, as well as for property that remains in the estate because of a failure of one or more of the will provisions. We accordingly attach no particular significance to the fact that the testatrix included a general residuary clause, naming as residuary legatees her closest relatives. See *Attorney Gen.* v. *Briggs,* 164 Mass. 561, 569. The use of a residuary clause does not per se manifest a desire to benefit the residuary legatees if the trust cannot be executed in the precise manner described in the will. Per contra, the absence of a gift over provision if the trust should fail does carry significance as indicating a general charitable intent. *Trustees of Putnam Free Sch.* v. *Attorney Gen.* 320 Mass. 94, 99. *Anna Jaques Hosp.* v. *Attorney Gen.* 341 Mass. 179, 182. We conclude that a general charitable intent on the part of Catherine has been made out. See *Norris* v. *Loomis,* 215 Mass. 344, 346. It follows that the trust does not fail, and that the doctrine of cy pres should be applied.

We next consider Sarah's will which has, as earlier stated, two provisions relating to the Johnson Home. Our conclusion that the doctrine of cy pres is applicable to the trust created by Catherine is not determinative of the issue with respect to these provisions in Sarah's will. The bequest in article FIFTH, paragraph 3, of Sarah's will of $3,000 to the petitioners sufficiently identifies and incorporates by reference the charitable provision in Catherine's will, which had been proved and allowed at the time Sarah executed her own will. *Dexter* v. *Harvard College,* 176 Mass. 192, 198. *Bemis* v. *Fletcher,* 251 Mass. 178, 186. The bequest, as already noted, has been invested by the Johnson trustees since they received it in 1937. Applying to Sarah's will the same criteria we applied to Catherine's will, we have no difficulty in finding a general charitable intent. There is no gift over provision as to the $3,000 in the event that the Johnson Home is not established. More significantly, article EIGHTH in terms shows a general charitable intent by the provision that, upon the termination of the whole trust, the entire residue is to be divided into four equal parts, each to be used for charitable purposes, one of which is the Johnson Home. Sarah's will goes further and says that if the Johnson Home is not or cannot be established then the aged of North Andover and vicinity are to benefit anyway. We do not purport to incorporate the gift over clause in article EIGHTH into the bequest of article FIFTH. We do, however, give weight to it, as part of the whole instrument, and as tending to show a general charitable intent. It follows that Sarah's bequest of $3,000 and its increments, now in the hands of the petitioners, under the doctrine of cy pres must be added to, and follow in kind, the disposition of the property of the trust established under Catherine's will.

The duty of Sarah's trustee with respect to the one fourth of the residue, pursuant to the provisions of article EIGHTH, paragraph 2, is clearly stated in the will and no instructions appear to be necessary. It is for the trustee under the terms of the will, and not for the court under cy pres, to determine what "home for the aged . . . under

the circumstances it thinks proper" should benefit from the fund.

The decree is modified to provide that in connection with the application of cy pres some formal recognition be given to the Johnson family. Thus modified it is affirmed. Counsel fees and expenses are to be allowed as determined by the Probate Court.

*So ordered.*