BOARD OF SELECTMEN OF PROVINCETOWN & another[1] *vs.*
ATTORNEY GENERAL & another.[2]

Barnstable. February 11, 1983. — April 12, 1983.

Present: ARMSTRONG, GREANEY, & KASS, JJ.

*Trust,* What constitutes, Charitable. *Devise and Legacy,* Gift of land for
public library. *Real Property,* Determinable fee, Condition subse-
quent.

A devise of a house and land to a town to be used "for the purposes of a
public library" which provided that if the town, on the date of the tes-
tatrix's death, owned real estate which was, or could be, used as a
library, or that if it decided not to accept the devise, the property was
to be sold and the proceeds added to the residue of her estate created a
charitable trust. [642-643]
A devise of a house and land to a town to be used "for the purposes of a
public library" which provided that if the town, on the date of the
testatrix's death, owned real estate which was, or could be, used as a
library, or that if it decided not to accept the devise, the property was
to be sold and the proceeds added to the residue of her estate, created
neither a determinable fee nor a fee subject to a condition subsequent,
and the town acquired the property in fee simple absolute subject to a
public charitable trust, under which the property was to be used for a
library. [643-646]
A resulting trust arose for the benefit of the sole residuary beneficiary
under a will by which the testatrix had devised her house and land to a
town to be used "for the purposes of a public library" and had directed
immediate disposition of the property through the residuary clause if
the town failed to meet certain conditions precedent to the vesting of
the devise, where the town never attempted to use the property as a
library and it had become impracticable to carry out the testatrix's in-
tended purpose, where the actual use of the house and land as a library
was the essence of the devise, and where, absent a statement of general
charitable intent in the will towards the town or its library system, the
doctrine of cy pres was unavailable to the town to allow it to sell the
property and apply the proceeds to general library use. [646-648]

[1] The town of Provincetown.
[2] President and Fellows of Harvard College.

PETITION IN EQUITY for a declaratory decree filed in the Probate Court for the county of Barnstable on February 20, 1969.

The case was heard by *Harvey, J.*, on motion for summary judgment.

*Lawrence O. Spaulding, Jr.*, for the plaintiffs.

*Elizabeth Goddard (Francis L. Coolidge & Robert N. Shapiro* with her) for President and Fellows of Harvard College.

GREANEY, J. This is a dispute between the inhabitants and the board of selectmen of the town of Provincetown (collectively the town) and President and Fellows of Harvard College (Harvard) over a devise of real estate in the will of Mabel Elliott Day. The material facts are undisputed and, together with the proceedings below, may be summarized as follows. Mrs. Day died on November 24, 1949, leaving a will which was allowed by the Probate Court for Barnstable County on February 28, 1950. The fifth clause of her will reads as follows:

> "FIFTH: I give to the TOWN OF PROVINCE-
> TOWN, MASSACHUSETTS, my house and land on
> Gosnold Street in said Provincetown to be used by the
> town for the purposes of a public library or as a site for
> a public library building. If at the time of my death
> the said town already owns a public library building or
> public library site, or if for any reason the said town
> will not accept this devise within a year from the date
> of my death, then I direct my executors to sell the prop-
> erty within a reasonable time thereafter and add the
> proceeds to the residue of my estate."

Under part B of the will's twentieth clause, Harvard was given the entire residue of the estate, after the payment of certain specific charitable bequests, for the purpose of establishing at the Harvard Medical School a scholarship fund to be named the Russell Dunson Elliott Scholarship

Fund. That fund was established in 1950 according to the terms of the will. In part D of the will's twenty-second clause, Mrs. Day directed her executors to sell all her real estate as promptly as possible after her decease. This direction, however, was specifically made "[s]ubject to the gift to the TOWN OF PROVINCETOWN, MASSACHUSETTS, in clause FIFTH of this my will."

On February 13, 1950, the town voted to accept the gift of the Gosnold Street property "to be used by the Town for purposes of a public library or as a site for a public library building as set forth in a devise to the Town under the will of Mabel Elliott Day." By decree of March 27, 1951, the Probate Court for Barnstable County determined that the town's acceptance of the gift "complie[d] with the condition of the devise," and that the town had not held "legal title to real estate devoted to public library purposes" at the time of Mrs. Day's death. The court directed the executors to deliver "full possession" of the property to the town. Although it is not reflected in the 1951 decree, at the time of Mrs. Day's death Provincetown held a beneficial interest in property which was used as a public library. The town subsequently acquired title to other library property and determined that its library facilities were adequate and that it had no use for Mrs. Day's property as a library or library site. In 1969, the town commenced the present action in the Probate Court against the Attorney General, seeking a declaration of its rights in the property. The complaint was answered but the case then lay dormant until 1981, when an amended complaint was filed, adding Harvard as a party defendant.

The town argued in the Probate Court (as it does here) that the 1951 decree established its satisfaction of both conditions precedent to the devise. Since the conditions had been met, the town urged that it should be free to sell the property and apply the proceeds to general library purposes either under the express terms of the will or upon the application of the doctrine of cy pres to a perceived general intent to benefit the town library. The town sought to but-

tress its position as to Mrs. Day's intent by submitting an affidavit of Emily Hiebert, a friend of Mrs. Day, which addressed that issue. Harvard asserted that the property should pass to it under the residuary clause of the will or by application of the doctrine of cy pres. Harvard moved to strike portions of the Hiebert affidavit and for summary judgment. Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974).

The judge allowed Harvard's motion to strike and thereafter allowed its rule 56(b) motion. Judgment entered declaring that the town "does not own [the] real estate in fee simple free and clear of any trust or restrictions imposed by [the] will," and that "the devise as set forth in the will . . . has failed." The judgment ordered the property sold and the proceeds turned over to the Harvard scholarship fund established pursuant to the will's residuary clause. We conclude that the existence of a "genuine issue as to any material fact" has not been demonstrated, Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), and that Harvard is entitled to judgment as matter of law.

1. *The existence of a charitable trust.* The threshold question, not directly addressed by the parties or the court below,[3] and of critical importance to the possible application of cy pres, is whether the devise creates a charitable trust.

"The existence of a trust does not depend upon the terminology used and failure to employ the word 'trust' is in no sense determinative of whether one has been created." *Cooney* v. *Montana,* 347 Mass. 29, 35 (1964). See Restatement (Second) of Trusts § 351 comment b (1957). The controlling factor is the intent of the testatrix, as made to

---

[3] The will's fifth clause itself is not expressly couched in terms of a trust, and the 1951 decree of the Probate Court did not address whether the town's possession of the property vested subject to a trust. The present judgment is equally inexplicit on the point. The Attorney General's answer to the amended complaint, the only indication of his position in this case, refers to the devise as being upon a "condition" which has "failed," language which suggests the presence of a defeasible fee (a subject which will be discussed later in this opinion). One of Harvard's arguments expands upon the Attorney General's failed condition hypothesis.

appear through the words of the will. *Id.* at § 358. Mrs. Day's will demonstrates her intent to provide for the use of her real estate by the citizens of Provincetown for the specific purpose of a library. The narrow scope of that intended use is spelled out with some particularity and reinforced by the testatrix's provision of an immediate gift over for Harvard's benefit if the town, on the date of her death, owned real estate which was, or could be, used as a library. The absence of any alternative disposition after the town's fulfilment of the two conditions suggests that the testatrix meant the use of her property as a library to be permanent. We think the devise in this case is similar in most material respects to the devise discussed in *Salem* v. *Attorney Gen.,* 344 Mass. 626, 627 (1962), where the testator left certain land "to the City of Salem to be used forever as Public Grounds for the benefit and enjoyment of [its] citizens." The Supreme Judicial Court construed this devise as a grant of the land to the city for the purposes of a public park and held that "[i]f this was the intent of the testator, it almost necessarily follows that he intended to establish a trust to effect this purpose as only by such means could its use for a public park be effected in perpetuity." *Id.* at 630. We conclude that the will's fifth clause manifests an intent to devise the property in trust, and, on the authority of the *Salem* case, creates a charitable trust.

2. *The nature of the estate devised in trust.* The town's argument that the devise could not fail after the 1951 decree established fulfilment of the conditions precedent appears to suggest that the town held title in fee simple absolute in trust since 1951.[4] Harvard and the Attorney General, on the other hand, appear to suggest that the devise was upon a "condition" which has "failed", a contention which implies the existence of a fee simple upon condition subsequent or a

---

[4] The town also argues that the fifth clause expressly empowers sale of the property and use of the proceeds for library purposes. There is no such language in the will.

fee simple determinable.[5] There is no question that defeasible fees may be held in trust. Bogert, Trusts and Trustees §§ 419-420 (2d ed. rev. 1977). 4 Scott, Trusts § 401 (3d ed. 1967). The presence of a defeasible fee, however, could raise serious questions under G. L. c. 260, § 31A.[6] It is therefore necessary to establish the exact nature of the estate devised.

"A fee simple determinable is created by a conveyance which contains words effective to create a fee simple and in addition a provision for the automatic expiration of the

---

[5] Harvard also argues that the gift over provision of the will's fifth clause, which was to operate in Harvard's favor if the conditions precedent to vesting had not been met, should be "liberally construed" to apply to the failure of the town to use the property as a library. This construction is not supported by the plain words of the will which say nothing about a gift over to Harvard after title vested in the town.

[6] General Laws c. 260, § 31A, as amended by St. 1961, c. 448, § 5 (applicable to rights of entry for condition broken and possibilities of reverter created prior to January 2, 1955), provides, in pertinent part, that no proceeding based on such an interest may be maintained unless on or before January 1, 1964: (a) the condition was broken or the reverter had occurred and the person holding the interest had taken possession, or (b) the person holding the interest had filed in the appropriate registry "a statement in writing, duly sworn to, describing the land and the nature of the right and the . . . instrument creating it." Nothing in the record suggests that any of these requirements have been met. It would therefore appear that if (as Harvard and the Attorney General appear to suggest) the town held the land by a fee simple determinable or a fee simple subject to a condition subsequent, G. L. c. 260, § 31A, would preclude the maintenance of a proceeding based on interests of the type held by Harvard under the residuary clause. See Selectmen of Nahant v. United States, 293 F. Supp. 1076, 1078 (D. Mass. 1968).

Although § 31A has the effect of a statute of limitations, it is in reality a hybrid, containing "elements of both a statute of limitations and a recording statute." Brookline v. Carey, 355 Mass. 424, 426 (1969). "Unlike a typical statute of limitations, . . . [it] (1) cuts off interests because of failure to file notice rather than failure to bring suit; (2) is not limited in effect to presently assertable causes of action; (3) prescribes no time limit in which existing causes of action must be asserted; and (4) does not toll the filing requirement for persons under a disability." Economic Dev. & Industrial Corp. v. United States, 456 F. Supp. 1204, 1211 (D. Mass. 1982). Thus, despite the fact that it has not been pleaded here, the statute's potential application requires that the nature of the estate devised be identified with precision.

estate on the occurrence of a stated event."[7] *Selectmen of Nahant* v. *United States,* 293 F. Supp. 1076, 1078 (D. Mass. 1968). See Restatement of Property § 44 (1936). A fee simple subject to a condition subsequent differs from a fee simple determinable in that the former is made defeasible upon the occurrence of the condition, entry being necessary to terminate the fee.[8] See Park & Park, Real Estate Law § 122, at 139 (1981); *Restatement of Property, supra* § 45; *Proprietors of the Church in Brattle Square* v. *Grant,* 3 Gray 142, 147 (1855).

The devise in Mrs. Day's will obviously lacks the legal characteristics of either type of defeasible fee. Moreover, "[t]he mere recital . . . of the purpose for which the land conveyed was to be used is not in itself sufficient to impose any limitation or restriction on the estate granted." *Selectmen of Nahant* v. *United States, supra* at 1078. See *Packard* v. *Ames,* 16 Gray 327, 328-329 (1860); *Rawson* v. *School Dist. No. 5,* 7 Allen 125, 127-131 (1863); *Barker* v. *Barrows,* 138 Mass. 578, 580 (1885); *Battelle* v. *New York, N.H. & H.R.R.,* 211 Mass. 442, 444 (1912); *Boston Waterfront Dev. Corp.* v. *Commonwealth,* 6 Mass. App. Ct. 214, 227 (1978), *S.C.,* 378 Mass. 629 (1979); Park & Park, *supra* § 122, at 139. We conclude that neither a determinable fee nor a fee subject to a condition subsequent was created by the devise in the fifth clause (hence G. L. c. 260, § 31A, has

---

[7] See, e.g., *First Universalist Soc.* v. *Boland,* 155 Mass. 171, 174 (1892) (grant to plaintiff "so long as said real estate shall . . . be devoted to the . . . support of . . . doctrines of the Christian religion"); *Institution for Sav.* v. *Roxbury Home for Aged Women,* 244 Mass. 583, 586 (1923) (grant in trust for "as long as the [plaintiff] Institution shall continue to exist"); *Brown* v. *Independent Baptist Church,* 325 Mass. 645, 645-646 (1950) (devise to defendant "so long as they shall maintain and promulgate their present religious belief and faith and shall continue a Church").

[8] See, e.g., *Dyer* v. *Siano,* 298 Mass. 537, 538, 540 (1937) (a devise, [i]t being understood and agreed that the . . . lands are to be used for Railroad and Station purposes: otherwise the same . . . shall revert to the Grantors"); *United States* v. *16 Acres of Land,* 47 F. Supp. 603, 604 (D. Mass. 1942) (devise to town for park purposes, but "[s]hould the [land] or any part thereof be used at any time . . . for other than park purposes after my death, the same shall revert to [two named devisees]").

no application), and that the town acquired the property in fee simple absolute, see Restatement of Property, *supra* § 15, subject to a public charitable trust under which the property was to be used for a library.

3. *Cy pres.* Mrs. Day's intent was to provide for the use of her property as a library. The town has never attempted to use the property for that purpose, has no inclination nor need to put a library at the site, and concedes that it has become impracticable to carry out the testatrix's intended purpose. With the facts in this posture, the town urges the application of the doctrine of cy pres to allow it to sell the property and apply the proceeds to general library use.

The rule of cy pres may be stated as follows: "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." Restatement (Second) of Trusts § 399 (1957). See *Wesley United Methodist Church* v. *Harvard College,* 366 Mass. 247, 249-250 (1974). "But if the charitable purpose is limited to a particular object or to a particular institution, and there is no general charitable intent, then, if it becomes impossible to carry out the object . . . the doctrine of [cy pres] does not apply, and, in the absence of any limitation over or other provision, the legacy lapses." *Teele* v. *Bishop of Derry,* 168 Mass. 341, 343 (1897). See *Rogers* v. *Attorney Gen.,* 347 Mass. 126, 131 (1964).

We think it clear that Mrs. Day contemplated that the conditions precedent she imposed to the vesting of the devise in the town would ensure use of her property as a library. If the town failed to meet her conditions, she directed immediate disposition of the property through the residuary clause, the sole beneficiary being a second charity — Harvard. We also think significant (a) the lack of any clearly

discernible statement of general charitable intent in the will towards Provincetown or its library system; and (b) the lack of any authorization for sale of the property and use of the proceeds to support a library elsewhere in the town despite the indication in the fifth clause that Mrs. Day knew how to direct a sale of real estate (having directed such a sale for the benefit of Harvard and not the general benefit of the town[9] if the conditions precedent were not met). We thus view the actual use of Mrs. Day's home or its lot as a library to have been the essence of the devise, and, as a result, conclude that the equitable rule of approximation which underpins the doctrine of cy pres cannot be applied to benefit the town. This determination is consistent with established precedent governing disposition of charitable gifts in trust (including gifts to municipalities) which due to the lack of a general charitable intent are ineligible for the application of cy pres.[10] See *Easterbrooks* v. *Tillinghast*, 5

---

[9] Although we take no position on what result might follow had the town used the property for a library and then faced a situation where any further use for that purpose became impracticable, we sense that the town's case may not have been helped by the prescribed use never having been made despite the passage of three decades.

[10] We are cognizant that "the absence of a gift over provision if the trust should fail does carry significance as indicating a general charitable intent." *Rogers* v. *Attorney Gen., supra* at 134. We think the lack of such a provision here indicates no more than an assumption on Mrs. Day's part that if the town did not own library property at her death it would welcome the opportunity to take her property as a site and so use it. We see nothing in this result contrary to the policy, with respect to gifts made for a public charitable purpose, which favors a construction that the gift has been made with a general intention to devote the property to public charitable purposes unless the instrument of gift provides otherwise. See G. L. c. 12, § 8K, inserted by St. 1974, c. 562, § 1, applicable to gifts made after the statute's effective date. St. 1974, c. 562, § 3. Mrs. Day's will demonstrates an intent to have her property pass to a second charity only if the narrow, special purpose for which she gave it to the town was impracticable at the time of her death.

Finally, we note Harvard's argument that cy pres should operate for its benefit. The argument has some appeal in a context like this where the testatrix has manifested an intention to benefit one of two charities at her death. There is, however, no need to address whether the argument is sound under traditional notions of the doctrine of cy pres on the somewhat

Gray 17, 21 (1855); *Bullard* v. *Shirley*, 153 Mass. 559, 559-560 (1891); *Teele* v. *Bishop of Derry*, *supra* at 344-345; *Gill* v. *Attorney Gen.*, 197 Mass. 232, 233, 237 (1908); *Bowden* v. *Brown*, 200 Mass. 269, 270-271 (1908); *Dodge* v. *Anna Jaques Hosp.*, 301 Mass. 431, 434-436 (1938); *Holmes* v. *Welch*, 314 Mass. 106, 109-110 (1943). Compare *Weeks* v. *Hobson*, 150 Mass. 377 (1890), and *Cinnaminson Library Assn.* v. *Fidelity-Philadelphia Trust Co.*, 141 N.J. Eq. 127 (1948). In the circumstances, the town holds the property upon a resulting trust, see Restatement (Second) of Trusts, *supra* § 413; Scott, *supra* § 399.3, at 3111; Bogert, *supra* § 399, at 327, for the benefit of Harvard under the terms of the residuary clause. See *Weeks* v. *Hobson*, *supra* at 379; *Brown* v. *Independent Baptist Church*, 325 Mass. at 647. There is nothing in the Hiebert affidavit which would require that the case be tried; the challenged paragraphs of the affidavit were properly struck by the judge.[11]

complex facts of this case, since we reach the same practical result through the application of settled trust principles.

[11] The court struck the following paragraphs of the affidavit of Emily Hiebert:

"3. [Mrs. Day] expressed her concern about the welfare of the Town of Provincetown and, in particular, the educational and intellectual resources of the community.

"4. She was aware that the Freeman Library was not owned by the Town and was in poor condition.

"5. From time to time, she indicated how she intended to dispose of her property by will and indicated that she desired that her property at 6 Gosnold Street be given to the Town to be used to improve the library facilities in the Town of Provincetown.

". . . .

"7. I feel that if Mrs. Day were alive today, she would be very pleased if the property at 6 Gosnold Street were sold and the proceeds were used to benefit the Provincetown Public Library."

To the extent that they are evidence of what the testatrix's intention was (pars. 3, 4 and 5), they are inadmissible, the will being unambiguous on that score. *Walton* v. *Draper*, 206 Mass. 20, 22 (1910). *Whitbeck* v. *Aldrich*, 341 Mass. 326, 329 (1960). See Bogert, *supra* § 437, at 528-529. To the extent they indicate the affiant's subjective impression of what the testatrix's state of mind would be today if she were alive (par. 7), they are irrelevant. To the extent that they merely indicate the testatrix's knowledge of the poor condition of the then existing library (par. 4), they

The first paragraph of the judgment is affirmed. The second paragraph of the judgment is struck and in its place is to be substituted a declaration that the testamentary trust under which the town held the property in fee simple absolute has failed and that the town now holds the property in a resulting trust for the benefit of Harvard as sole residuary beneficiary. The last paragraph of the judgment directing Harvard to sell the property and add the proceeds to the Russell Dunson Elliott Scholarship Fund is affirmed. Neither party is to have costs of appeal.

*So ordered.*

---

are not inconsistent with the notion of a narrow, limited intent to have a library located on the property.