JANICE E. PHIPPS, executrix, *vs*. KATHY BARBERA & others.[1]

Barnstable. January 15, 1986. — October 10, 1986.

Present: BROWN, SMITH, & WARNER, JJ.

*Devise and Legacy,* Identity of beneficiary. *Charity. Practice, Civil,* Presumptions and burden of proof, Parties. *Evidence,* Relevancy and materiality.

In construing a legacy to the "New York Museum of Fine Arts," a nonexistent institution, a Probate Court judge erred in requiring the Museum of Fine Arts, located in Boston, to establish beyond a reasonable doubt that it was the intended beneficiary. [4-6] WARNER, J., concurring.

The doctrine of cy pres was unavailable to the Museum of Fine Arts in Boston to reform a bequest of certain paintings to the "New York Museum of Fine Arts," a nonexistent institution, where it appeared that the testatrix had clearly intended to benefit a particular institution, rather than museums in general or the public at large, especially in light of a clause in the will providing for a specific gift over to a named individual in the event that the institution should decline the paintings. [6-7]

Where a Probate Court judgment was reversed on another ground, this court declined to consider whether the judge had erred in denying a defendant's motion to join a party under Mass.R.Civ.P. 19(a). [7]

In an action by an executrix seeking instructions as to the disposition of certain paintings bequeathed to a nonexistent institution, the judge's finding that the testatrix had told a named individual, prior to the execution of the will, that the testatrix wanted the individual to have the

---

[1] Janice E. Phipps, New York Museum of Fine Arts, Museum of Fine Arts of Boston, and the Attorney General of the Commonwealth.

paintings was totally irrelevant, where, by the terms of the will, the testatrix clearly intended a primary bequest to a museum, and the sole issue before the judge was to determine which museum was probably intended by the testatrix. [7]

CIVIL ACTION commenced in the Barnstable Division of the Probate and Family Court Department on August 31, 1983.

The case was heard by *John V. Harvey,* J.

*Weld S. Henshaw (Alison J. Bell* with him) for the plaintiff.

*Matthew J. Dupuy* for Kathy Barbera.

SMITH, J. Marian E. Phipps died on October 13, 1982, and her will was admitted to probate in the Barnstable Probate and Family Court on January 21, 1983. She left a life estate in her home and its contents, including three paintings by William McGregor Paxton,[2] to her half sister, Janice E. Phipps (Phipps). At Phipps' death, everything except the paintings would go to Kathy Barbera (Barbera), a cousin of the testatrix. The testatrix directed "that the three Paxton paintings . . . be donated to the New York Museum of Fine Arts to be added to the Paxton paintings already at the Museum. If the New York Museum of Fine Arts advises they do not wish to accept these paintings, then I give, devise and bequeath said paintings to Kathy Barbera."

Phipps was appointed executrix under the will. Because an investigation established that there is no museum by the name of the "New York Museum of Fine Arts," Phipps filed a complaint in the Probate Court seeking instructions as to the proper disposition of the three paintings. The complaint listed as defendants all the named beneficiaries under the will, including Barbera. In addition, the Museum of Fine Arts (MFA), located in Boston, was listed as a defendant because, according to the complaint, it was the only "Museum of Fine Arts which already [had] a collection of Paxton paintings." The Metropolitan

---

[2] Paxton (1869-1941) was a leading member of the "Boston School," a group of painters affiliated with the Museum School, a branch of the Museum of Fine Arts. He was a nationally known artist, particularly well noted as a portrait painter and a genre painter. Paxton was a cousin of the testatrix.

Museum of Art (Metropolitan), located in New York, was not named as a defendant. It had one Paxton painting.

The MFA and Barbera were the only defendants who filed answers to the complaint. Both agreed with the executrix that the will contained a latent ambiguity.[3] However, they disagreed as to the museum to which the faulty description applied. The MFA (and the executrix) contended that when the testatrix used the descriptive words "New York Museum of Fine Arts," she meant the MFA. Barbera, however, claimed that the testatrix intended the Metropolitan to be the recipient of the paintings.[4] Because of the ambiguity, the judge permitted the MFA and Barbera to introduce extrinsic evidence as an aid in construing the words used in the will. *Tucker* v. *Seaman's Aid Soc.,* 7 Met. 188, 208 (1843). See Smith, The Admissibility of

---

[3] A latent ambiguity occurs in a will when the words of the written instrument are clear and certain on their face, but some extrinsic fact makes their meaning ambiguous and uncertain. Here, the extrinsic fact that the "New York Museum of Fine Arts" did not exist rendered ambiguous the words "that the three Paxton paintings . . . be donated to the New York Museum of Fine Arts." Generally, there are two types of latent ambiguity. The first type occurs when a will clearly describes a person or thing, and two or more persons or things exactly fit that description. The second type of latent ambiguity exists when no person or thing exactly fits the description, but two or more persons or things partially fit. The latter type of latent ambiguity is present in the instant case. See Smith, The Admissibility of Extrinsic Evidence in Will Interpretation Cases, 64 Mass. L. Rev. 123, 124 (1979).

[4] Barbera's contention that the testatrix intended that the Metropolitan should receive the paintings was not devoid of self-interest. Prior to trial the Metropolitan had submitted an affidavit in support of the MFA's motion for summary judgment, which motion was subsequently denied. In its affidavit, the Metropolitan disclaimed any interest in acquiring the paintings and "irrevocably assign[ed] all of its right, title, and interest, if any, in and to the three Paxton paintings . . . to the [MFA]." Barbera argued to the judge that if he ruled that the Metropolitan was the intended recipient of the paintings, then she would be entitled to the paintings because the Metropolitan's statement in the affidavit was a disclaimer which triggered the provision in the will which stated that "if . . . [the museum does] not wish to accept these paintings, then I give, devise and bequeath said paintings to Kathy Barbera." We note that the judge's decision to award the paintings to Barbera was not based on this argument, and that the question whether the assignment of the Metropolitan's interest in the paintings would constitute a refusal to accept them under the terms of the will has not been decided.

Extrinsic Evidence in Will Interpretation Cases, 64 Mass. L. Rev. 123 (1979).

After the trial, the judge issued a memorandum of decision which contained his findings of fact, conclusions of law, and order for judgment. He ruled that he was not satisfied "beyond a reasonable doubt by the legal evidence as to whom the testatrix intended to name or describe when she referred to the New York Museum of Fine Arts." He ordered that the three paintings be given to Barbera, rather than to the MFA or the Metropolitan. Later, the judge issued a "corrected" judgment, recognizing that the will gave to Phipps a life estate in the three paintings, after which they were to go to the residuary beneficiary (Barbera). The MFA appeals from that judgment and raises several issues. The MFA contends that (1) the judge committed reversible error when he employed the wrong standard of proof; (2) the judge's findings of fact were, to a considerable extent, erroneous; (3) the judge committed error when he declined to apply the doctrine of cy pres; and (4) the judge erred in denying the MFA's motion to join the Metropolitan as a party.

We agree that the judgment must be reversed because the judge applied the wrong standard of proof. Although we need not address the MFA's other contentions, *Brennan* v. *Bongiorno,* 304 Mass. 476, 478 (1939), we discuss briefly those issues which may arise at a new trial.

1. *Standard of persuasion.* The judge employed the "beyond a reasonable doubt" standard in determining whether the MFA had produced sufficient evidence to establish that it was the intended beneficiary. The MFA correctly argues that the "preponderance of evidence" standard should have been used by the judge.

Although one early case supports the judge's position,[5] later cases and a leading authority in the field demonstrate that in

---

[5] In *Thayer* v. *Boston,* 15 Gray 347, 348 (1860), the court stated that "[i]t has long been settled that when in a will the name or description of a legatee is erroneous, the legacy shall not fail of effect if it can be ascertained *beyond reasonable doubt,* by legal evidence, whom the testator intended" (emphasis supplied). Although the opportunity has presented itself on numer-

regard to latent ambiguities of this type, claimants need only meet the "preponderance of evidence" standard. In *Bosworth* v. *Massachusetts Woman's Christian Temperance Union, Inc.,* 299 Mass. 93 (1937), the testatrix bequeathed a legacy to the "Womens [*sic*] Christian Association." Two organizations, the Boston Young Women's Christian Association and the Massachusetts Woman's Christian Temperance Union, Inc., claimed the bequest. The court stated that "[w]e cannot say that the judge was wrong in thinking it *more likely* that when the testatrix used the descriptive words . . . she meant the [Massachusetts Woman's Christian Temperance Union, Inc.]" (emphasis supplied). *Id.* at 95. Also see *Smith* v. *Livermore,* 298 Mass. 223, 242-243 (1937). Professor Austin Wakeman Scott in his definitive treatise states that "[t]he cases are numerous in which there is a devise or bequest to a named corporation, but there is in fact no corporation having that name. . . . It may appear that there are two or more corporations with somewhat similar names, none having the name stated in the will. The misnomer will not ordinarily result in the failure of the devise or bequest, and the property will be given to the corporation which on the evidence appears to have been the one *probably* intended by the testator." (Emphasis supplied.) 3 Scott, Trusts § 397.3 [3d ed. 1967). Although neither source uses the phrase "preponderance of evidence" the terms "more likely" and "probabl[e]" are used in the definition of that phrase. See *Sargent* v. *Massachusetts Acc. Co.,* 307 Mass. 246, 250 (1940) ("The weight or ponderance of evidence is its power to convince the tribunal which has the determination of the fact, of the actual truth of the proposition to be proved. After the evidence has been weighed, that proposition is proved by a preponderance of the evidence if it is made to appear *more likely or probable* in the sense that actual belief in its truth, derived from the evidence, exists in the mind or minds of the tribunal notwithstanding any doubts that may still linger there" [emphasis supplied]).

---

ous occasions, *Thayer* has never been cited as an authority in any subsequent Massachusetts case.

We see no reason why cases of this type require a higher degree of proof than the "preponderance of evidence" standard. We hold, therefore, that in a case that involves a latent ambiguity of this type, a claimant is required to show only by a preponderance of the evidence that it was the intended beneficiary. If no claimant meets that standard, the bequest is void for uncertainty. *Tucker* v. *Seaman's Aid Soc.,* 7 Met. at 208-209.

2. *Other issues.* We briefly discuss those issues which may arise at retrial.

a. *Application of cy pres doctrine.* The MFA argues that the judge committed error when he declined to apply the doctrine of cy pres to reform the bequest of the Paxton paintings. There was no error.

The cy pres doctrine has been stated as follows: "It is now a settled rule in equity that a liberal construction is to be given to charitable donations, with a view to promote and accomplish the general charitable intent of the donor, and that such intent ought to be observed, and when this cannot be strictly and literally done, [a] court will cause it to be fulfilled, as nearly in conformity with the intent of the donor as practicable." *Rogers* v. *Attorney Gen.,* 347 Mass. 126, 131 (1964), quoting from *American Academy of Arts & Sciences* v. *President & Fellows of Harvard College,* 12 Gray 582, 596 (1832). "[I]f the charitable purpose is limited to a particular object or to a particular institution, and there is no general charitable intent, then, if it becomes impossible to carry out the object . . . the doctrine of [cy pres] does not apply, and, in the absence of any limitation over or other provision, the legacy lapses." *Selectmen of Provincetown* v. *Attorney Gen.,* 15 Mass. App. Ct. 639, 646 (1983), quoting from *Teele* v. *Bishop of Derry,* 168 Mass. 341, 343 (1897).

We think that the cy pres doctrine does not apply here. The testatrix clearly intended to benefit a "particular," although nonexistent, institution, rather than museums in general or the public at large. *Selectmen of Provincetown* v. *Attorney Gen., supra* at 646-647. In addition, the presence in the clause that disposes of the paintings of a specific gift over to Barbera if

the paintings should not be accepted points to the conclusion that there was no general charitable intent. *Rogers* v. *Attorney Gen.*, 347 Mass. at 134. We see nothing in this result that is contrary to G. L. c. 12, § 8K.

b. *Joinder of Metropolitan as a party.* After the close of the evidence, the MFA filed a motion requesting that the Metropolitan be added as a necessary party pursuant to Mass.R.Civ.P. 19(a), 365 Mass. 765 (1974). The motion was denied. The MFA contends that the judge erred because there was substantial evidence introduced at the trial by Barbera that demonstrated that the Metropolitan might have been the intended beneficiary of the paintings. Barbera argues that the judge's action was correct because the Metropolitan was not subject to process and disclaimed any interest in the paintings in its affidavit that accompanied the MFA's motion for summary judgment (see n.4).

Because there is to be a retrial, we do not deem it necessary to rule on the judge's action. Prior to that trial, the MFA may renew its motion, if it so desires. We trust that if the motion is renewed, a showing will be made that the Metropolitan will submit to process and also claim that it has an interest relating to the subject of the action. See Mass.R.Civ.P. 19(a) (1), (2), 365 Mass. 765 (1974).

c. *Findings of fact.* We agree with the MFA that some of the judge's findings were clearly erroneous, as they were not supported by any evidence. The judge's finding that the testatrix told Barbera, prior to the execution of the will, that she wanted Barbera to have the paintings was totally irrelevant. By the terms of the will, the testatrix clearly intended a primary bequest to a museum, not a person. The sole issue before the judge was to determine which museum was probably intended by the testatrix to receive the paintings. In the circumstances of this case, any evidence that the testatrix intended the paintings to go to a person should not have been admitted. There were additional erroneous findings but they were of an inconsequential nature. We are sure that the errors will not be repeated at the new trial.

3. *Disposition*. The judgment is reversed, and the case is remanded to the Probate Court for proceedings consistent with this opinion.

*So ordered.*

WARNER, J. (concurring). I write in concurrence only to point to the paradox were we to hold that the burden of persuasion for the MFA was "beyond a reasonable doubt." A complaint for instructions may properly be brought only where a fiduciary harbors reasonable doubt as to the interpretation of an instrument or his duties under it. See *Hill* v. *Moors,* 224 Mass. 163, 165 (1916) ("In cases of doubt as to what the law is and what their conduct ought to be under it, [trustees] are entitled to instruction and direction from the court. . . . Unless a petitioner for instructions has real and serious doubts as to his duty, and the advice of the court is required for his protection and the discharge of his trust, the court is without jurisdiction to entertain such a petition."); Restatement (Second) of Trusts § 259, comment b (1959) ("The trustee is not entitled to instructions as to his powers or duties, unless there is a reasonable doubt as to the extent of his powers or duties."); 3 Scott, Trusts § 259 (3d ed. 1967) ("There are situations . . . in which the court will refuse to give instructions to the trustee. No instructions will be given where there is no reasonable doubt as to his duties and powers."); Bogert, Trusts and Trustees § 559 (rev. 2d ed. 1980) ("The court will not advise the trustee as to his powers where they are clearly fixed by the trust instrument or by common or statute law, but only in cases of real difficulty where there is an honest doubt after a careful reading of the instrument and the procurement of legal advice from counsel."); Loring, Trustee's Handbook § 48 (Farr rev. 1962) ("In practice, the courts are sympathetic to the problem of the trustee and will seek to help him in any case where a bona fide doubt or controversy exists. The trustee cannot simply lay the burden of his office upon the court; the court will not instruct him just because he is ignorant and does not know his duty or what the

law is. In such case, the court may tell him to take legal advice. There must be a reasonable doubt as to duties or powers."). The imposition of a burden of persuasion beyond a reasonable doubt would, of course, render all such questions unresolvable.