BRONISLAW NOWICKI *vs.* JOHN P. NOWICKI.

Essex.   November 26, 1956. — February 4, 1957.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Gift. Equity Pleading and Practice,* Findings by judge, Rehearing.

Reported evidence in a suit in equity by a father against his son did not show to be plainly wrong disbelief by the judge of testimony by the son that the father had given him a savings bank account standing in their names jointly, payable to either or the survivor, or a finding that by understanding of the parties the money in the account belonged to the father; and a decree ordering the son to surrender the bank book, which had been taken by the son, to the father and to pay the father a sum withdrawn by the son from the account was affirmed. [394]

There was no merit in a contention by an appellant from the final decree in a suit in equity that there should be a rehearing of the case because the appellant, apparently by his own choice, had tried the case himself without the assistance of counsel who had represented him in the case prior to the trial.   [394–395]

BILL IN EQUITY, filed in the Superior Court on July 3, 1952. The suit was heard by *Kirk,* J.

In this court the case was submitted on briefs.

*Frederick H. Magison,* for the defendant.

*Edward J. Nantoski,* for the plaintiff.

COUNIHAN, J.   This is a suit in equity arising out of a controversy between a father and son as to their respective rights in an insurance policy on the life of the father, in which no beneficiary is designated, and in an account in a Salem savings bank standing in the names of the father and son jointly, payable to either or the survivor.   The bill was dismissed as to the insurance company issuing the policy and the savings bank, both of which were named as defendants in the bill.

A final decree was entered ordering the son to surrender the policy to his father and to surrender the pass book of the bank to him also.   The decree further ordered that the son pay his father the sum of $8,550 which he had withdrawn from the savings bank together with interest of $1,814.03, amounting in all to $10,364.03.   The evidence is reported and the judge made "findings of fact."   The suit comes here upon the appeal of the son from the final decree.   There was no error.

The facts as found by the judge and by us are as follows: The disputed savings account was opened originally on November 1, 1939, in the names of the son and his mother Antonina, payable to either or the survivor.   At that time the father and his first wife Antonina each had an individual account in this bank.   The father was ill and it was feared that he might die.   As a result both accounts were withdrawn and a new account in the sum of $4,430.45 was opened in the names of Antonina and the son jointly, payable to either or the survivor.   By accretion of interest and further deposits the account amounted to $8,463.14 on October 19, 1951.   About this time Antonina became ill with an incurable disease and, in order to avoid what appeared to the father to be possible legal complications, this account was closed and a new account was opened in the same bank in the names of the father and son jointly, payable to either or the survivor.   The father retained possession of the bank

book which on February 14, 1952, showed a balance of $8,590.09.

Antonina died on November 11, 1951, and the father remarried in February, 1952. At the time of the trial the father was sixty-six years old and illiterate; the son was thirty-nine years old and a high school graduate. He was married in 1939 and had two children. The second marriage of the father caused a rift between father and son.

The son without the knowledge or consent of his father took the savings bank book and the policy from his father's house. In February and March, 1952, he withdrew all except $40.09 from this account.

The judge specifically found that "The understanding between father and son was that the money belonged to the father and would pass to the son only upon the father's death, unless the father, prior to that time, should make some other use or disposition of it." The judge also specifically found that "Most of the money . . . deposited was earned by the father and deposited by the frugal mother who also made some contributions from her own earnings. None of the money deposited belonged to the son."

The chief complaint of the son now is that these specific findings are not supported by the evidence. Without reciting the evidence in detail we are of opinion that it amply supports these findings. In his testimony the son asserted that the father gave him the savings account and the policy as a gift. Apparently the judge did not believe the son's testimony. Findings made upon oral testimony are not to be reversed unless they are plainly wrong. The obvious reason for this rule is that "a judge who has seen and heard the witnesses is in a much better position to determine their credibility than we are from a printed record." *Barnum* v. *Fay*, 320 Mass. 177, 180, and cases cited. The cases of *Druker* v. *Druker*, 268 Mass. 334, and *Tenczar* v. *Tenczar*, 332 Mass. 105, relied upon by the son, are not in point.

The son also complains and seeks a new trial because he was not represented by counsel at the trial. It appears, however, that he had retained counsel who filed an answer

in his behalf. We do not know what happened between then and the time of trial. Apparently he decided to proceed without an attorney until the suit had been decided adversely to him. He has no cause now to complain.

*Decree affirmed with costs of the appeal.*