THE NEW ENGLAND HOSPITAL *vs.* ATTORNEY GENERAL
& others.

Suffolk. April 7, 1972. — August 1, 1972.

Present: TAURO, C. J., SPIEGEL, REARDON, BRAUCHER, &
HENNESSEY, JJ.

*Trust*, Charitable trust. *Charity.* *Equity Jurisdiction*, Charity.

In an equity proceeding, where the terms of a testamentary charitable trust provided that the trustees should pay over the income to a certain hospital and expressed a desire of the testatrix that scholarships should be established to enable the most meritorious and needy female students of nursing at the hospital to be sent to Europe after graduation to complete their studies, it was held that the proper application of the income cy pres was to pay it to the hospital to establish scholarships to benefit the most meritorious and needy female nursing students in a health vocational training program then operated by the hospital instead of its former nurs-

ing school, rather than to pay the income to another institution to be used for needy and meritorious female medical students and student nurses as decreed by the trial court, where it appeared that the settlor, both during her life time and under other terms of her will, wished to benefit the hospital generally. [403–406]

PETITION IN EQUITY filed in the Probate Court for the county of Suffolk on May 21, 1970.

The case was heard by *Wilson*, J.

*Albert M. Fortier, Jr.*, for the petitioner.

*Raymond H. Young* for Edna Lamprey Stantial & others, successor trustees.

*Robert H. Quinn*, Attorney General, & *James J. Kelleher*, Assistant Attorney General, for the Attorney General, submitted a brief.

REARDON, J.   The New England Hospital (the hospital) brought a petition against the Attorney General and the trustees of a trust established under the will of Ada Augusta Draper.   After receiving a statement of agreed facts and hearing evidence, of which there is a transcript before us, the judge entered a decree from which the hospital appealed.   The judge made no findings of material facts.   The decree thus imports a finding of every fact essential to support the conclusion of the judge.   Findings made upon oral testimony will not be reversed unless they are plainly wrong.   *Berry* v. *Kyes*, 304 Mass. 56, 57.   *Nowicki* v. *Nowicki*, 335 Mass. 392, 394.   *Campagna* v. *Campagna*, 337 Mass. 599, 601. "Where, however, an ultimate finding rests upon inferences from facts admitted or found, since mere inferences do not involve the credibility of witnesses, we draw our own inferences without deference to those drawn by the trial judge.   In the instant case, the motive to be ascertained being that of one deceased, who could not testify, the question is whether the inference drawn by the judge from the evidence that the trust indenture was not made in contemplation of death was the proper inference."   *O'Donnell* v. *Commissioner of Corps. & Taxn.* 317 Mass. 664, 665.   See *New England Trust Co.*

v. *Commissioner of Corps & Taxn.* 315 Mass. 639, 643–644; *Hopkins* v. *Commissioner of Corps. & Taxn.* 320 Mass. 168, 169–170.

The testatrix, who died in 1888, made a number of bequests and devises to individuals and charities. Article XXIII (a) of the will leaves certain property to the trustees for the following uses and purposes: "to collect the income thereof and to pay over the same to the New England Hospital for Women and Children [the hospital] of Boston, Massachusetts. It is however my express desire that such income shall be applied to establish scholarships and to enable the most meritorious and needy female students to be sent to Europe after graduation to complete their studies. The amounts so held in trust shall be known as the 'Ada Draper Fund.'"

In 1922, following a petition for instructions by the then trustees, the Probate Court decreed that it was "needless and impractical to establish such scholarships and to send the holders thereof to Europe" and that the hospital could "apply the income of the trust fund to the expenses of maintaining a free training school for nurses and giving instruction after graduation."

In 1951 the hospital discontinued the school, and from that year until 1966 applied the income from the trust to the expenses of the hospital's in-service education program for nurses. Since 1966 the hospital has accumulated the income in a savings account and no income has been distributed to the hospital since March, 1970. In 1969 the hospital discontinued the in-service program and now operates a health vocational training program which prepares students to serve as nursing assistants, orthopedic technical assistants, medical transcribers, and histology technicians. "Courses are currently being developed for Operating Room Technicians and Chairside Dental Assistants."

The decree of the court on this petition stated that the "present policies, facilities and activities of the petitioner fail to carry out either the initial expressed desire of the testatrix or the authorization established by

probate decree of 1922." The petitioner was directed "to pay all income received by it from the trust since 1966, and all accumulations thereon, and the [respondent] Trustees . . . [were] directed to pay accumulated and future income, to the Boston University School of Medicine exclusively for the purpose of providing scholarships for meritorious and needy female students of medicine or for qualification of such persons as registered nurses, such amounts to be known as the 'Ada Draper Fund.'" The court also allowed costs and expenses, including counsel fees in the sum of $3,000 for counsel for the petitioner and $7,500 for counsel for the trustees.

It is agreed by the parties that it is impractical and needless to comply literally with the terms of the testamentary trust. Where they differ is as to where the income should go. This appears to be a proper case for the application of cy pres. The basic rule was stated by Chief Justice Shaw in *American Academy of Arts & Sciences* v. *Harvard College*, 12 Gray 582, 596: "It is now a settled rule in equity that a liberal construction is to be given to charitable donations, with a view to promote and accomplish the general charitable intent of the donor, and that such intent ought to be observed, and when this cannot be strictly and literally done, this court will cause it to be fulfilled, as nearly in conformity with the intent of the donor as practicable." *Rogers* v. *Attorney Gen.* 347 Mass. 126, 131, and cases cited. The application of the cy pres doctrine should "carry out the essential purpose of the donor and at the same time . . . preserve as far as reasonably practicable the details of . . . [her] original scheme." *Briggs* v. *Merchants Natl. Bank*, 323 Mass. 261, 275. In our view the decree does not reflect a proper application of the standards. It appears that the testatrix, as part of her charitable intent, desired that the hospital itself be benefited. The statement of agreed facts lists from the annual reports of the hospital contributions made to it by the testatrix in four years from 1875 through 1883. There is no evidence that these gifts were in any way

restricted to any particular activity of the hospital.[1] After making the gifts the testatrix then left an unrestricted bequest to the hospital of $25,000. It thus appears that both during her lifetime and at the time of her death the testatrix wished to benefit the objectives of the hospital. "In framing a scheme the court will consider evidence as to what would probably have been the wish of the settlor at the time when . . . [she] created the trust if . . . [she] had realized that the particular purpose could not be carried out." Restatement 2d: Trusts, § 399, comment d. The interaction of the language of the will taken in conjunction with other evidence would indicate that the terms of the trust in its mention of "needy female students" do not preclude the hospital as well from benefiting generally from it.

We consider the question how the trust income should be spent. A medical historian called as an expert by the trustees testified that he examined the annual reports of the hospital for the years 1860 through 1899, and that during the 1870s interns and residents were referred to as "students." This was so even as to those with medical degrees. The expert testified that in those days doctors often went abroad for study or further study. It appeared that after 1881 interns were not referred to as students in the hospital reports and that there was a reference in the reports to "nurse students." The hospital reports also gave evidence that nurses from the hospital were sent to Europe for study. Thus we cannot say that because the hospital reports on various occasions referred to those studying medicine as "students," and since doctors training during the relevant period went abroad for study, the reference in the trust to "students" was limited to those studying to become doctors. It is equally likely that the reference in the trust to students included those studying to be-

---

[1] The objects of the hospital, as set out in its 1863 by-laws, are: "I. To provide for women medical aid of competent physicians of their own sex. II. To assist educated women in the practical study of medicine. III. To train nurses for the care of the sick."

come nurses. We thus think it proper to apply the income of the trust fund to assist female nursing students.

We next consider whether female students in the health vocational training program can properly receive financial aid from the trust. In our view they may. There was considerable evidence on the nature of the training offered in this program and its relationship to the field of nursing. We are satisfied that the evidence indicated that these specialties have "a strong relationship to nursing," and are "an extension or an outgrowth from the broad field of nursing." Thus an application of trust income to establish scholarships to benefit "the most meritorious and needy female students" in the hospital's health vocational training program most nearly meets the intent of the testatrix in accordance with the cy pres doctrine.

In view of the foregoing, it would be clearly wrong to divert the income from the hospital to any other agent. We agree with the Attorney General that the fund should remain with the charity which was the beneficiary of the testatrix's donation, and that it should be expended in a way approximating the intention of the donor.

We are unable to understand the disparity in the award of counsel fees, and remand the matter to the Probate Court for rehearing and adjudication of this item. The decree is reversed and a new decree shall be entered declaring that the trustees are to pay the New England Hospital the accumulated and future income of the trust for the purposes as herein interpreted and authorized, and that the hospital is entitled to apply for such purposes monies accumulated by it since 1966.

*So ordered.*