WESLEY UNITED METHODIST CHURCH *vs.* HARVARD COLLEGE & others.

Essex. May 13, 1974. — September 13, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Charity. Trust,* Charitable trust. *Devise and Legacy,* Charitable trust.

The Probate Court properly found that a residuary testamentary trust which was to provide "one worthy male member . . . or communicant" of a trustee church with a yearly $500 scholarship "to attend Harvard College . . . for undergraduate education" was impracticable where present and continuing lack of specified beneficiaries among the small congregation, only a portion of whom, mostly adult, were males, served effectively to freeze disbursement of the trust funds. [249-251]

A will, creating a residuary trust which was to provide "one worthy male . . . or communicant" of a trustee church with a yearly $500 scholarship "to attend Harvard College . . . for undergraduate education," but which proved to be impracticable, evidenced a general charitable intent so as to make applicable the doctrine of cy pres, rather than a charitable intent so limited in purpose as to require a resulting trust in favor of the testator's heirs-at-law, where there was no gift over in the event the trust should fail, where the testator made other gifts in his will to charities, and where he wished the trust to serve as a memorial to his deceased mother. [251-253]

BILL IN EQUITY filed in the Probate Court for the county of Essex on July 13, 1972.

The suit was heard by *Pettoruto,* J.

*George E. Morse* (*Robert L. Holloway, Jr.,* with him) for the defendants.

*James D. Bell* for the plaintiff.

TAURO, C.J.   This is a bill in equity brought by the board of trustees of the Wesley United Methodist Church, as trustees under a charitable trust created by the will of one Harold E. Colson, seeking modification of the terms of the trust under the doctrine of cy pres. The defendant Harvard College did not file an answer, and the Attorney General waived his right to be heard. G. L. c. 12, § 8. The sole heirs at law of Harold E. Colson, Harold C. Guppy, Sr., and Mary F. Smith, contend that the doctrine of cy pres is inapplicable and that a resulting trust should be declared in their favor. The Probate Court granted the plaintiff the requested relief, and the heirs at law have appealed. We affirm.

The case is before us on a statement of agreed material facts which may be summarized as follows. Harold E. Colson died on December 28, 1968. His will, executed in September, 1957, contained the following provision: "Fourth: All the rest, residue and remainder of my estate, of whatsoever kind and wheresoever situate, I give, devise and bequeath unto Wesley Methodist Church of Salem, Massachusetts, to be used by the Board of Trustees of said church to establish a fund to be designated as the 'Frances L. Colson Memorial Scholarship Fund' and both the principal and income of such fund shall be used by said Board of Trustees to provide one five-hundred dollar scholarship each year to assist one worthy male member of the congregation or communicant of said church, to be selected each year at the discretion of said Board of Trustees, to attend Harvard College, Cambridge, Massachusetts for undergraduate education. In the event that the annual income from said fund shall exceed five hundred dollars, then the income in excess of that required for the scholarship above referred to shall be accumulated until such excess income exceeds the sum of five hundred dollars, at which time said Board of Trustees may, at its discretion,

provide a second five-hundred-dollar scholarship, subject to the qualifications and limitations as above provided."

Frances L. Colson was the testator's mother. Both she and the testator had been members of the Wesley United Methodist Church, he having joined on December 29, 1907. When his will was executed in September, 1957, the decedent had a small estate, with modest investment in United States Savings Bonds. In time, his net worth increased significantly, and as of July 11, 1972, the funds given to the Wesley United Methodist Church for trust purposes exceeded $55,000, producing an annual income approximating $3,200.

To date, the church has given out no scholarships. In fact, it has not even received any applications from students or prospective students. It has only 236 members, most of whom are adults. The tuition charge at Harvard College has risen substantially since 1957, and as of 1973 was $2,600 a year. In 1957 the college did not admit women, but it does today.

The Probate Court found that "the express terms of the trust . . . are literally impracticable of operation in limiting the beneficiaries to male members or communicants of Wesley Methodist Church," and that "the testator's intention to provide scholarships for students attending Harvard College as a memorial for his mother may be fulfilled to promote and accomplish the general charitable intent of the testator under the application of cy pres." It was ordered that "the Board of Trustees of the Petitioner apply income and accumulations of the trust fund in the awarding of annual scholarships, in their discretion, unlimited in amount, to worthy male or female applicants, not restricted to members or communicants of the petitioner if there are no such applicants, for undergraduate or graduate education in Harvard University."

The defendant heirs at law argue that both the findings as to impracticability and general charitable intent are erroneous. Each is a necessary element for the application of the cy pres doctrine: "Where property is given in trust for

a particular charitable purpose, and it is impossible or impracticable to carry out that purpose, the trust does not fail if the testator has a more general intention to devote the property to charitable purposes. In such a case the property will be applied under the direction of the court to some charitable purpose falling within the general intention of the testator." Scott, Abridgment of the Law of Trusts, § 399.2 (1960). See *Rogers* v. *Attorney Gen.* 347 Mass. 126, 131 (1964); *New England Hosp.* v. *Attorney Gen.* 362 Mass. 401 (1972); Restatement 2d: Trusts, § 399. Cy pres will not apply, however, if the trust remains capable of meaningful application, or if, despite impracticability, there is a lack of general charitable intent on the testator's part.[1] In the latter situation, ". . . in the absence of any limitation over or other provision, the legacy lapses." *Rogers* v. *Attorney Gen., supra,* at 131, quoting from *Teele* v. *Bishop of Derry,* 168 Mass. 341, 343 (1897).

We hold that the Probate Court's findings were warranted and the decree was not erroneous. It is true, as the respondent heirs argue, that the Colson trust is theoretically capable of application, in that (1) a male undergraduate student at Harvard might at some point in the future join the Wesley United Methodist Church; (2) an adult male member of the church might himself enroll at the college, or (3) eligible male children might be born to the present predominantly adult membership. Nevertheless, it is clear that literal compliance with the terms of the trust is now preventing, and will most likely continue to prevent, any use of the funds. Of the 236 members, only a portion are males, and most of them are adult, past college age. It is obvious that the Wesley United Methodist Church, in bringing this suit, sees very few or even no present or prospective scholarship applicants among that slim percentage of its congregation that is even eligible

---

[1] In arguing that the Probate Court erred in both its findings, the defendant heirs ask for alternative modes of relief. If we were to rule the trust to be practicable, they ask that the income in excess of what is required for annual scholarships be declared a partial intestacy, to be passed to them under a resulting trust. On the other hand, if we were to find impracticability but no general charitable intention, they ask that the entire trust res be passed to them under a resulting trust.

under the terms of the trust. This and other courts have found impracticability where a present and probably continuing lack of specified beneficiaries serves effectively to freeze disbursement of charitable funds. See, e.g., *New England Hosp.* v. *Attorney Gen., supra,* at 403 (1972) (trust income was to be applied to "establish scholarships and to enable the most meritorious and needy female [nursing] students [at the New England Hospital for Women and Children] to be sent to Europe after graduation to complete their studies"); *Conway* v. *Bowe,* 116 N. Y. S. 2d 182 (1952) (Scholarships were available to students attending colleges with a specified compulsory curriculum. In light of the present and foreseeable future nature of college curricula, it was held highly unlikely, though theoretically possible, that there would be any qualified applicants.); *Union Methodist Episcopal Church of Wilmington, Del.* v. *Equitable Trust Co.* 32 Del. Ch. 197 (1951) (Trust was established to aid financially the members of two particular churches in obtaining admission to designated homes for the aged. The combination of a very small number of applicants, and the existing lack of space in the designated institutions, made it highly unlikely, though theoretically possible, that the trust funds could be put to their intended use). This rule is a sound one, as no purpose, least of all the settlor's, is served by tying up funds intended for charitable use with the thin thread of a theoretically possible (but unlikely) change in circumstances. See *Milton* v. *Attorney Gen.* 314 Mass. 234, 238 (1943). We believe that in the instant case, in view of the size and character of the Wesley United Methodist Church membership, the Probate Court was correct in its finding that the Frances L. Colson trust is impracticable.

Moreover, we believe that the settlor displayed a general charitable intent, as distinguished from an intent "limited to . . . a specific charitable purpose." *Rogers* v. *Attorney Gen.* 347 Mass. 126, 131 (1964). Ultimately, the question is whether the settlor would have preferred that his bequest be applied to a like charitable purpose in the event that his original scheme did not work out, or would have instead desired that the unused funds be diverted to private use.

This analysis is often difficult since more often than not the settlor, fully expecting his scheme to be effective, never contemplates alternative dispositions, or at least fails to include them in his testamentary design. This appears to be the case here, as the settlor's will contains neither an express statement of general charitable intent, nor specific instructions for the disposition of the trust funds in the event of failure or impracticability. Thus, the general charitable intent, or lack of it, must be inferred from the language of the trust provisions contained in the will, and from the language of the will as a whole. *Brookline* v. *Barnes,* 324 Mass. 632, 638-639 (1949). *Rogers* v. *Attorney Gen., supra,* at 131.

We are satisfied that the settlor would have wished that the funds be applied to a like charitable purpose rather than be removed from charitable use entirely. The applicable provision establishes a $500 scholarship in his mother's name to assist "one worthy male member of the congregation or communicant of . . . [the Wesley United Methodist] church, to be selected each year at the discretion of . . . [the] Board of Trustees, to attend Harvard College . . . for undergraduate education." While "[t]he class whom . . . [the testator] sought to benefit is narrowly circumscribed," *Rogers* v. *Attorney Gen., supra,* at 133, that fact alone does not preclude a finding that the testator was motivated by broader, overriding charitable considerations. *Ibid.* See *Trustees of Dartmouth College* v. *Quincy,* 357 Mass. 521 (1970). Relevant in this regard, and indicative of a general charitable intent, is the absence of a gift over in the event that the trust should fail. *Brookline* v. *Barnes, supra,* at 639. *Worcester County Trust Co.* v. *Grand Knight of the Knights of Columbus,* 325 Mass. 748, 753 (1950). *Rogers* v. *Attorney Gen., supra,* at 134. The decedent's will contains no gift over clause. Nor does the language of the controlling trust provision indicate a purposeful and permanent exclusion of all others from his beneficence. Another factor pointing to a general charitable intent is the disposition of gifts to other charities. *Norris* v. *Loomis,* 215 Mass. 344, 346 (1913). *Brookline* v.

*Barnes, supra,* at 638. Bogert, Trusts and Trustees (2d ed.) § 437, and cases collected in fn. 34. The decedent bequeathed his eyes to the Wills Eye Hospital of Philadelphia to be used for scientific research, and the rest of his mortal remains to the Cox Institute of the University of Pennsylvania for the same purpose. We conclude on the basis of all of these considerations, including his desire to establish a memorial to his deceased mother, that the decedent possessed a general intent to have his estate applied to charitable ends, and that he " . . . would attach so much more importance to the object of the gift than to the mechanism by which he intended to accomplish it that he would prefer to alter the mechanism to the extent necessary to save the object." *Worcester County Trust Co.* v. *Grand Knight of the Knights of Columbus, supra,* at 754, quoting from *Briggs* v. *Merchants Natl. Bank,* 323 Mass. 261, 274-275 (1948).

In view of the foregoing, we conclude that the case was a proper one for the application of the cy pres doctrine. No question is raised as to the manner in which the doctrine was applied.

*Decree affirmed.*