APPEALS COURT 
 
 IN THE MATTER OF THE RICHARD E. HOWARD TRUST.[1]

 
 Docket:
 23-P-889
 
 
 Dates:
 October 2, 2024 – August 26, 2025
 
 
 Present:
 Massing, Henry, & Grant, JJ.
 
 
 County:
 Barnstable
 

 
 Keywords:
 Trust, Charitable trust, Public trust, Cy pres. Probate Court, Standing. Devise and Legacy, Charitable trust. Attorney General. Practice, Civil, Motion to dismiss.
 
 

  
      Petition filed in the Barnstable Division of the Probate and Family Court Department on January 12, 2022.
      A motion to dismiss was heard by Angela M. Ordoñez, J.
      Eric Carriker, Assistant Attorney General, for the Attorney General.
      Lawrence D. Hunt for the petitioner. 
      C. Alex Hahn for the trustee.
      Brian J. Wall for The Raymond Moore Foundation, Inc.
      HENRY, J.  The petitioner, Cape Cod Center for the Arts, Inc. (CCCA), and the Attorney General appeal from a judgment dismissing CCCA's general trust petition concerning the Richard E. Howard Trust dated November 20, 1993 (trust).  In the petition, CCCA sought, among other things, reformation of the trust under the doctrine of cy pres to substitute CCCA for the Raymond Moore Foundation, Inc. (RMF), a nonprofit charitable entity, as the recipient of a gift.  The trust, through its trustee, and RMF filed a joint motion to dismiss the petition pursuant to Mass. R. Civ. P. 12 (b) (1) and (6), 365 Mass. 754 (1974), which was allowed by a judge of the Probate and Family Court.  The judge concluded that CCCA lacked standing, and that the trust is not a public charitable trust and therefore the doctrine of cy pres did not apply.  The conclusion that the trust is not a public charitable trust was dispositive on the issue of the Attorney General's standing as her duties are limited to cases involving those types of trusts.  See, e.g., Ames v. Attorney Gen., 332 Mass. 246, 250 (1955).
      On appeal, CCCA and the Attorney General argue that either or both have standing,[2] the trust is a public charitable trust made with a general charitable intent, and the doctrine of cy pres should apply to the gift to RMF.  For the reasons that follow, we conclude that the Attorney General has standing to pursue this suit; however, the record is inadequate to determine whether cy pres should apply to the gift to RMF.  Although CCCA does not have standing to bring this action as a petitioner, it may move to intervene in light of its ownership of a building affected by the trust's administration.  Accordingly, we vacate the order dismissing the petition and remand for further proceedings consistent with this opinion.
      Background.  We summarize the facts alleged in the petition and documents attached thereto, including the trust, unless otherwise noted.  See Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).
      1.  Trust.  In 1993, Richard E. Howard (donor) executed a declaration that created the trust and provided that on his death the income of the trust would be used for two purposes.  First, the declaration provided for the establishment of the "Richard E. Howard Scholarship" fund and directed that $500 from the income of the trust be distributed annually to a student selected by the superintendent and the head of the art department of the Dennis-Yarmouth Regional High School.  Second, the declaration provided,
"The remaining balance of income shall accumulate until a sum suitable to erect a room to the Joshua Nickerson Archives Building is available, at which time a sum not to exceed Fifty Thousand ($50,000.00) Dollars shall be advanced to the Trustees of [RMF] for the construction of the addition, which shall be known as the 'RICK HOWARD ROOM', . . . and shall be used for the display of Playhouse archives and paintings of the DONOR.  The income from said trust after the completion of the addition shall be used annually for equipment, supplies, materials and maintenance."
The express terms of the trust do not state that the display be for the benefit of the public, and the petition does not describe who can access the Joshua Nickerson Archives Building, also known as the "Nickerson Studio Building" (Nickerson building), and for what purpose(s).  The declaration further stated that any failed disposition "shall be paid over and distributed, free of all trust, as directed by the Board of Trustees of [RMF]."  The donor passed away in 1996, at which time the trust became irrevocable.  CCCA alleges that the donor's estate was valued at $167,000 at the time of his death and that other funds were held by the trust.[3]
      2.  RMF and CCCA.[4]  RMF was formed in 1947, "[g]enerally for charitable purposes and more particularly for the education and benefit of the public by the promotion and fostering of music, drama, horticulture[,] and the fine arts."  RMF owns a twenty-one-acre parcel of land in the town of Dennis on which several buildings are situated.  Those buildings include the Cape Playhouse, the Cape Cinema, the Cape Museum of Fine Art, and, relevant here, the Nickerson building that is referenced in the trust declaration.  The land and the buildings form an "arts-oriented campus" that has been owned and operated by RMF for many years.
      In 1967, the Internal Revenue Service (IRS) determined that RMF did not qualify as a tax-exempt organization under the Federal tax code.[5]  In light of that determination, RMF began to transform itself from the owner-operator of the campus into a landlord.[6]  To that end, in the 1990s, RMF created a separate nonprofit organization, the Seasonal Theatre Archives and Athenaeum, Inc., which changed its name to Cape Cod Center for the Arts, Inc., in 2005.
      In 2006, ten years after the donor's death, RMF conveyed its "right, title and interest" to several buildings and their contents, including the Nickerson building and the Cape Playhouse, to CCCA.  RMF also leased the land underneath those buildings to CCCA for a ninety-nine-year term.[7]  To date, none of the trust income has been paid toward the addition to the Nickerson building.[8]  As discussed further below, the record does not indicate whether RMF offered the $50,000 to CCCA or if CCCA could build the room (either with that amount, by adding its own funds, or by using that amount to seed a capital campaign).  At oral argument, the Attorney General and CCCA represented that CCCA presently owns the Playhouse archives, but not any of the donor's paintings.
      3.  Present suit.  In January 2022, CCCA brought this suit in the Probate and Family Court seeking to be substituted for RMF as the recipient of the trust distributions for the Nickerson building plus statutory interest.  CCCA also sought an accounting, removal of the trustee of the trust, and the authority to name a successor trustee.  In April 2022, RMF and the trust filed affidavits of objections.  In June 2022, on the day of the pretrial conference, the Attorney General filed a notice of appearance but did not attend the hearing.
      In July 2022, the trust and RMF filed a joint motion to dismiss, which CCCA opposed.  A judge held a hearing on the motion at which counsel for all parties, including an assistant attorney general, appeared.  Relevant here is that the assistant attorney general argued that the trust is "straightforwardly a charitable trust" because it "serves charitable purposes [and] has charitable beneficiaries."  The assistant attorney general also asserted that if the trust is a public charitable trust, the Attorney General had standing even if the judge determined that CCCA did not.[9]
      After the hearing, the judge allowed the joint motion to dismiss by a written memorandum and order.  The judge concluded that the doctrine of cy pres was inapplicable because the trust "is not a public charitable trust."  Instead, the judge stated that the trust is a "private irrevocable trust that contains two specific bequests to two particular beneficiaries and does not contain any general charitable bequest to the public at large."  The judge also concluded that CCCA does not have standing because it is not a legal beneficiary or settlor of the trust.  The decision did not address the Attorney General's standing.  CCCA and the Attorney General each appealed.[10]
      Discussion.  "In reviewing a motion to dismiss under rule 12 (b) (1) or (6), 'we accept the factual allegations in the [petitioner's] complaint, as well as any favorable inferences reasonably drawn from them, as true'" (citation omitted).  Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 20–21 (2006).
      1.  Standing.  As an initial matter, RMF and the trust argue that CCCA and the Attorney General do not have standing.
      a.  Private trusts and public charitable trusts.  Here, the standing issue turns on whether the trust is a private trust (in which case neither CCCA nor the Attorney General would have standing) or a public charitable trust (in which case, at a minimum, the Attorney General would have standing).  See DeGiacomo v. Quincy, 476 Mass. 38, 44 (2016).  A private trust benefits designated beneficiaries.  See id.  These designated beneficiaries have standing to bring a suit for enforcement of a private trust, see Weaver v. Wood, 425 Mass. 270, 275 (1997), cert. denied, 522 U.S. 1049 (1998), and the trustee also may seek instructions from the court, see DeGiacomo, supra at 45.
      Unlike a private trust, a public charitable trust provides some benefit to the public at large or to an indefinite class of persons who are reasonably described.  See DeGiacomo, 476 Mass. at 44; Staman v. Assessors of Chatham, 351 Mass. 479, 483 (1966).  The class that benefits from a public charitable trust "need not be large," Staman, supra, and may be "narrowly circumscribed" (citation omitted), Wesley United Methodist Church v. Harvard College, 366 Mass. 247, 252 (1974) (Wesley United).  "The designee of the charitable trust's income is not deemed the true beneficiary of the trust but instead the 'conduit' of the trust's over-all charitable mission" (citation omitted).  DeGiacomo, supra at 45.  "[T]he public or the community . . . is the real beneficiary of every charitable trust."  R. Chester, E. Deleery, N.A. McLaughlin, G.G. Bogert, & G.T. Bogert, Trusts and Trustees § 363, at 29 (3d ed. 2018) (Bogert on Trusts).
      The donor of a public charitable trust may specify a particular charitable purpose for the gift.  See Wesley United, 366 Mass. at 249-250.  Such a gift may be made with either a "general charitable intent" or for a "charitable purpose . . . limited to a particular object, or to a particular institution."  Teele v. Bishop of Derry, 168 Mass. 341, 343 (1897).  See Wesley United, supra at 250.  However, the question whether a trust is a public charitable trust should not be conflated with the question whether the donor had a general charitable intent.[11]  See Teele, supra; Selectmen of Provincetown v. Attorney Gen., 15 Mass. App. Ct. 639, 646 (1983) (determining whether settlor of public charitable trust had "general charitable intention . . . .  [or] charitable purpose . . . limited to a particular object or to a particular institution" [citations omitted]).  In determining who may sue for reformation of a trust, we consider whether the trust is a public charitable trust.  This inquiry is objective and turns on the purpose to which the property is to be applied -- i.e., does the gift serve a charitable purpose and will that purpose be carried out for the benefit of the public at large or for some indefinite class of persons?  See 6 A.W. Scott & M.L. Ascher, Scott and Ascher on Trusts § 38.1, at 2752-2753 (6th ed. 2024) (Scott and Ascher on Trusts).  Cf. Matter of Troy, 364 Mass. 15, 58 (1973).  The donor's motive in creating the trust is immaterial.[12]  See Scott and Ascher on Trusts, supra; Restatement (Second) of Trusts § 368 comment d (1959).  
      The Attorney General has the duty "of taking action to protect public charitable trusts and to enforce proper application of their funds."  Ames, 332 Mass. at 250.  The Attorney General's role in the enforcement of public charitable trusts is grounded in common law and has been codified by statute.  See id.  Specifically, the Attorney General must "enforce the due application of funds given or appropriated to public charities within the commonwealth and prevent breaches of trust in the administration thereof."  G. L. c. 12, § 8.  Moreover, the Attorney General must be made a party to judicial proceedings in which she has a potential interest in the performance of those duties, including in cy pres proceedings to determine whether a gift was made for a "public charitable purpose."  G. L. c. 12, § 8K.  See G. L. c. 12, § 8G; G. L. c. 214, § 10B.  Our case law often refers to the Attorney General's authority in this regard as "exclusive"; however, "a plaintiff who asserts an individual interest in the charitable organization distinct from that of the general public has standing to pursue her individual claims."  Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 245 (2007), cert. denied, 552 U.S. 1099 (2008).
      b.  Analysis.  Here, the motion judge concluded that the trust is a "private irrevocable trust" that contains two specific bequests to two specific beneficiaries and does not contain any general charitable bequests.  We cannot determine whether this view is correct because it is not adequately supported by the record.  The donor made one gift to establish a scholarship fund.  See Wesley United, 366 Mass. at 252 (trust to award scholarship in honor of donor's mother each year to one member of specific congregation, selected by congregation's board of trustees, to attend Harvard College, was charitable trust).  The donor also bequeathed certain funds to RMF -- an entity that all parties agree is a nonprofit charitable organization -- to construct the Rick Howard room for the purpose of displaying his paintings and the Playhouse archives.[13]  See Attorney Gen. v. Weymouth Agric. & Indus. Soc'y, 400 Mass. 475, 477 (1987) ("public charity" arises "either by being organized with the intent to limit the organization's use of its funds to charitable purposes or by engaging in conduct which results in the entity holding funds for charitable purposes").
      Certainly, a bequest to build a museum may serve a public charitable purpose if it benefits members of the public who visit to view the exhibits.  See Jackson v. Phillips, 96 Mass. 539, 556 (1867) (promotion of education is charitable purpose).[14]  Indeed, the Restatement (Third) of Trusts (2003) (Restatement [Third]) recognizes that gifts such as this one are charitable if the works to be displayed are of public interest or literary or artistic value.  See Reporter's Note to Restatement (Third) § 28 comment h (trust "to exhibit a settlor's art collection is not charitable if the writings or collections are of negligible public interest or literary or artistic value").  The Restatement's illustrations on this issue are instructive:
"A wealthy citizen of Townville left his estate to T, in trust, to construct and maintain a small museum solely to exhibit his own paintings and his personal collection of paintings by others.  The testimony of experts establishes that the paintings are without artistic merit, and no other evidence is presented proving that there is public interest in the contemplated museum.  The intended trust is not charitable."  (Emphasis added.)
Restatement (Third) § 28 comment l, illustration 5.  By contrast,
"S has devised and her family has donated funds to T, in trust, to construct and support a small museum to collect works of regional artists and to exhibit the collection and also to exhibit and otherwise promote the work of regional artists.  The trust is charitable as a trust of interest and benefit to the community."
Restatement (Third) § 28 comment l, illustration 4.
      On this point, RMF represented in its pretrial memorandum that the donor "was a widely known painter who painted, inter alia, Cape Cod landmarks."  The parties do not appear to dispute that the donor's paintings have artistic merit;[15] however, whether the display would be accessible to the public and, if so, whether there is a public interest in the contemplated addition to the Nickerson building and the items to be displayed (including the Playhouse archives if they alone are displayed)[16] is not addressed in the record, and no fact finding was done on that issue.  On this limited record, we think the petition adequately alleges that the trust at issue is a public charitable trust such that the Attorney General has standing to bring a suit for its enforcement and is a required party.[17]  See G. L. c. 12, §§ 8, 8G.  See also DeGiacomo, 476 Mass. at 45; Weaver, 425 Mass. at 275.  However, nothing in this decision precludes the judge from finding otherwise on a more developed factual record.
      We recognize that the suit at issue was filed by CCCA.  Generally, an institution that hopes to be named as the recipient of a distribution by operation of the cy pres doctrine does not have an "interest different in kind from that of the public generally, which is represented exclusively by the Attorney General."  First Christian Church v. Brownell, 332 Mass. 143, 147 (1955).  However, as the present owner of the Nickerson building, CCCA's participation in the suit, at least as an intervener, may be proper.[18]  See R. Chester, G.G. Bogert, & G.T. Bogert, Trusts and Trustees § 441, at 250 (3d ed. 2005) (on cy pres application, "institutions or persons seeking to secure benefits from the application are heard and sometimes permitted to intervene").  Cf. Brookline v. Barnes, 327 Mass. 201, 202 (1951) (Brookline No. 2) (parties making proposals to court for use of charitable funds allowed as interveners in cy pres proceedings); Bolster v. Attorney Gen., 306 Mass. 387, 388 (1940) (same).
      Accordingly, we conclude that the judgment dismissing the petition should be vacated and the matter remanded.  On remand, the Attorney General is free to move to substitute herself as petitioner in this matter, and CCCA may move to intervene.  To the extent that the Attorney General does not seek to pursue this suit, she shall file a notice with the Probate and Family Court to that effect, and the suit may be dismissed.
      2.  Remand.  We next address issues that are likely to arise on remand if a judge concludes that the bequest to erect the Rick Howard room creates a public charitable trust.  As the Supreme Judicial Court has aptly noted, "It is easier to state the doctrine [of cy pres] than to apply it."  Brookline v. Barnes, 324 Mass. 632, 638 (1949) (Brookline No. 1).  Under the doctrine, 
"[w]here property is given in trust for a particular charitable purpose, and it is impossible or impracticable to carry out that purpose, the trust does not fail if the testator has a more general intention to devote the property to charitable purposes.  In such a case the property will be applied under the direction of the court to some charitable purpose falling within the general intention of the testator" (citation omitted).
 
Wesley United, 366 Mass. at 249–250.  "In applying the doctrine of cy pres the courts endeavor to accomplish the general charitable purpose of the [donor] 'as nearly as it can be conveniently done, consistently with the efficacious promotion of the general design'" (citation omitted).  Brookline No. 2, 327 Mass. at 208.  The doctrine applies only if the bequest is impossible or impractical to effectuate and the donor had a general charitable intent as opposed to "an intent to devote the property to a specific charitable purpose."  Brookline No. 1, 324 Mass. at 638.  See Wesley United, supra.  A court reaches the question of the donor's intent only if the charitable bequest is impossible or impractical to effect as written.  See Pritchard v. Attorney Gen., 77 Mass. App. Ct. 494, 496 (2010).
      a.  Impossibility or impracticability.  CCCA, RMF, and the trust take the position that the bequest to RMF cannot be carried out as written because CCCA now owns the Nickerson building (and apparently the Playhouse archives).  However, nothing in the record as it presently stands demonstrates that the bequest to RMF is impossible or impracticable to effectuate.
      The declaration of trust requires only that a sum not exceeding $50,000 be advanced to RMF for the construction of the addition to the Nickerson building.  RMF may obtain CCCA's consent to construct the addition with the trust funds, or the two entities may work in concert to build the Rick Howard room.  Notably, the record here does not reflect that RMF or the trust has ever requested CCCA's consent or made any other reasonable effort to build the room.  For its part, CCCA has represented that it is "ready, willing and able to carry out [the donor's] vision, with the very artifacts and building that [the donor] included in his dream."[19]  Therefore, "[u]ntil such [reasonable] efforts are made, and are shown to be futile, there is no need for further proceedings on the issue whether cy pres would apply . . . ."  Museum of Fine Arts v. Beland, 432 Mass. 540, 545 (2000) (trustees made no reasonable efforts to explore alternative locations to exhibit fourteen paintings held in trust).  See Davenport v. Attorney Gen., 361 Mass. 372, 376 (1972); Cohen v. Lynn, 33 Mass. App. Ct. 271, 279 (1992).  To the extent that any entity fails to cooperate in effectuating the bequest as written without just cause to do so, such conduct may preclude that entity from receiving distribution of trust funds.  See Brookline No. 2, 327 Mass. at 208.  Contrast Briggs v. Merchants Nat'l Bank of Boston, 323 Mass. 261, 270 (1948) (charitable gift failed where master found owner of property and trustee controlling certain assets were at impasse that was not result of personality conflict or lack of honesty or good faith).
      b.  Donor's charitable intent.  If the parties make the requisite showing of impossibility or impracticability, the judge then may consider whether the donor intended to devote the gift only to the specific charitable purpose stated in the declaration of trust such that the gift passes through the provision for failed gifts to RMF, or whether the donor had a more general charitable intent such that cy pres proceedings are necessary.  See Wesley United, 366 Mass. at 249-250.
      A donor has a general charitable intent if "the donor would attach so much more importance to the object of the gift than to the mechanism by which he intended to accomplish it that he would prefer to alter the mechanism to the extent necessary to save the object."  Worcester County Trust Co. v. Grand Knight of the Knights of Columbus, 325 Mass. 748, 754 (1950), quoting Briggs, 323 Mass. at 274-275.  Stated another way, the court is tasked with determining whether the donor would have preferred for his bequest be applied to a similar charitable purpose or for the funds to pass under the provision of the trust for failed gifts.[20]  The court may consider the language of the donor's will and declaration of trust, as well as "the circumstances relevant to the property involved in the testamentary trust."  Rogers v. Attorney Gen., 347 Mass. 126, 132 (1964).
      The parties cite a host of cases in support of their respective views on the issue whether the donor had a general charitable intent.  Most of those cases predate 1974, when the Legislature enacted a statute that provides a presumption in favor of finding a general charitable intent when a gift is made for a public charitable purpose.  See G. L. c. 12, § 8K.[21] Although the issue of the proper application of that statutory presumption is not before us at this juncture, we recognize that there is a dearth of case law interpreting the statute.  See Phipps v. Barbera, 23 Mass. App. Ct. 1, 6-7 (1986) (no general charitable intent where testatrix directed that three paintings be donated to particular, nonexistent institution and, if institution did not accept gift, then to testatrix's cousin); Selectmen of Provincetown v. Attorney Gen., 15 Mass. App. Ct. 639, 647 n.10 (1983) (noting that summary judgment decision concerning charitable gift predating statute was not contrary to policy favoring construction for general charitable intent).  If necessary, we leave that issue for the judge to resolve, in the first instance, on a more developed factual record.[22]
      We note that some factors favoring a "charitable purpose . . . limited to . . . a particular institution," Teele, 168 Mass. at 343, include that the donor named RMF as the recipient of any failed gift and provided that RMF would receive eighty percent of the principal if the trustee terminates the trust early.  See id. at 344-345 (testator's primary purpose was to build chapel in particular town in Ireland; no general intent to benefit particular religion).  Moreover, at least according to RMF's pretrial memorandum, the original trustee named by the donor was the donor's friend and a member of the board of trustees of the Cape Playhouse.  See First Church in Somerville (Unitarian) v. Attorney Gen., 375 Mass. 332, 336 (1978) (settlor's intent to benefit particular church; conditional gift over to Harvard consistent with settlor's religious beliefs and gift over to Massachusetts General Hospital supported by settlor's "well documented" ties to hospital).  Again, these are factual issues to be resolved by the judge on remand.[23]
      Conclusion.  The judgment of dismissal is vacated.  The matter is remanded for further proceedings consistent with this opinion.
                                          
 
So ordered.
footnotes

          [1] Dated November 20, 1993.
          [2] The Attorney General did not take a position on CCCA's standing.
               [3] RMF states that the trust received $150,000 after the donor's death and settlement of his estate.
               [4] We include some facts concerning RMF from its affidavit of objections.  These facts are provided for background purposes only; none of the facts outside of the petition affects our analysis below.
               [5] The IRS's determination was due to the fact that RMF derived its principal income and support from ticket sales and rental income rather than public donations.  An entity may still be considered charitable under State law even if it does not have tax-exempt status from the IRS.  See 940 Code Mass. Regs. § 2.01 (1993); 940 Code Mass. Regs. § 2.01 (2012).  The trust and RMF concede, and CCCA and the Attorney General agree, that RMF is a nonprofit charitable organization under Massachusetts law.
               [6] At oral argument, RMF represented that it rents the premises at a discounted rate in an effort to promote the arts.
                [7] The conveyance and lease agreement between RMF and CCCA dated December 20, 2006, is attached to the petition.
               [8] RMF further states that the trustee was not able to make the $50,000 distribution of "accumulated income" to RMF at the time of the 2006 conveyance of the Nickerson building.  No party has indicated the income as of January 2022, when the petition was filed.
          [9] The assistant attorney general did not take a position on how the office of the Attorney General would proceed if the judge concluded that CCCA lacked standing, but he suggested that in other cases the Attorney General has been permitted to take over as petitioner where the party who initially brought the suit lacked standing.
               [10] RMF and the trust moved to strike the notices of appeal on the bases that CCCA failed to file its notice of appeal within thirty days of the entry of the judgment, and that the sixty-day time period to file a notice of appeal in cases involving the Commonwealth did not apply because the Attorney General was not a party to the suit.  See Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019).  The judge denied the motion by margin endorsement noting that the "Attorney General was a party to this action."  RMF and the trust sought leave to file a late notice of appeal from that order, but the motion was denied by a single justice of this court.  The Attorney General's and CCCA's notices of appeal are properly before us.
          [11] The trust and RMF appear to contend that, as a matter of law, a trust does not become a public charitable trust by virtue of making a single charitable gift with its funds.  While the better practice, which is less likely to engender litigation, would be to create separate trusts for charitable and noncharitable purposes and to state expressly whether one has or does not have a public charitable intent, we disagree that a trust with mixed purposes cannot be a charitable trust as a matter of law.  See Restatement (Third) of Trusts § 28 comment e (2003).
               [12 The nature of the donor's charitable intent -- as we discuss later -- is part of the fact-specific analysis to determine whether the doctrine of cy pres applies to a charitable gift with a specified purpose that is impossible or impractical to effectuate.  See Rogers v. Attorney Gen., 347 Mass. 126, 131-132 (1964).  See also Bogert on Trusts § 366, at 67.  As part of the inquiry into intent in this case, the judge on remand may consider various provisions of the trust, including the article that allows the trustee to make a payment or distribution directly to any beneficiary, and the provision that allows the trustee to terminate the trust early and distribute the principal to RMF and the scholarship fund.
               [13] We consider the bequests at the time the trust became irrevocable, notwithstanding that the donor reserved certain rights during his lifetime.  See Coffin v. Attorney Gen., 231 Mass. 579, 581-582 (1919).  See also Restatement (Second) of Trusts § 361 comment a, illustration 1 (1959).
               [14] For example, "[i]f a settlor leaves money with which the trustees are to found and operate perpetually an art museum, there are never any definite beneficiaries, even in the broadest sense.  The educational and cultural advantages of the museum flow to the neighboring community and its visitors" (citation omitted).  Bogert on Trusts § 363, at 32.
               [15] Indeed, the donor appears to have been a painter of some renown.  See Cape Cod Museum of Art, Ric [sic] Howard:  Red, White and Blue, https://www.ccmoa.org/single-post/ric-howard-red-white-and-blue [http://perma.cc/XX36-8N7V].  If through fickle fashion or for some other reason the room was no longer of interest to the public, if the donor is found to have had general charitable intent, the trustee could seek permission from the court to use the funds consistent with that general charitable intent.  See, e.g., Norris v. Loomis, 215 Mass. 344, 345-347 (1913) (where testatrix left her home to be used as "'Old Folks' Home," but property was too small and accompanying money gift insufficient to maintain such home, funds should be administered according to cy pres because language of will showed general aim of establishing home outweighed requirement that it operate out of her former house).
               [16] CCCA concedes that it does not own any Richard Howard paintings, and the trust declaration permits the trust to sell donor paintings to support the trust.  The record is not clear whether the trust or RMF owns any paintings.
               [17] To the extent that the trust and RMF argue that the Attorney General was not a party to the suit in the trial court proceedings, failed to raise her arguments below, and is not aggrieved by the judgment of dismissal, we disagree.  Although the Attorney General did not file a written opposition to the joint motion to dismiss, the assistant attorney general's argument at the hearing on the motion adequately preserved the issue of her standing in this suit.
               [18] CCCA argues that it has standing because RMF's beneficial interest in the trust was transferred to CCCA by virtue of the 2006 assignment to CCCA of RMF's ownership interest in the Nickerson building.  Nothing in the conveyance and lease agreement that transferred ownership of the Nickerson building and its contents to CCCA purported to transfer RMF's interest in the potential gift from the trust to CCCA.
          [19] At oral argument, CCCA suggested that it could satisfy the condition to "erect a room" by dividing an existing room in the Nickerson building.  We do not resolve that question but direct the parties back to the language of the trust.  At oral argument, CCCA also represented that CCCA and RMF "do not see eye to eye" such that it is "not a workable solution" for the two entities to work together.  For its part, RMF questioned whether CCCA could erect the Rick Howard room consistent with environmental limitations.  RMF represents that the gift can be facilitated through the erection of a room at one of the other buildings on the campus.  These are questions of fact that cannot be resolved on a motion to dismiss.
               [20] The donor's inclusion of a provision that any failed gift would pass to RMF is not necessarily dispositive on the issue whether the donor had a general charitable intent.  See Rogers, 347 Mass. at 134; Attorney Gen. v. Briggs, 164 Mass. 561, 568 (1895).  Cf. Trustees of Dartmouth College v. Quincy, 357 Mass. 521, 524, 532-533 (1970) (where will provided failed gift would pass to Dartmouth College for promotion of science and literature, court allowed reasonable deviation to ensure continuance of original charitable gift to create school for girls in Quincy).
               [21] The statute provides that "[a] gift made for a public charitable purpose shall be deemed to have been made with a general intention to devote the property to public charitable purposes, unless otherwise provided in a written instrument of gift."  Section 8K was originally enacted by St. 1974, c. 562, §§ 1, 3, and later reenacted verbatim by St. 1974, c. 716.
               [2]2 For instance, we note that CCCA owns the Nickerson building but only leases the land for a ninety-nine-year term.  At the end of the term, CCCA might have to move the building or the building might revert to RMF, and any resolution in favor of CCCA would have to address that possibility.
          [23] The request by the trust and RMF for fees and costs under G. L. c. 215, § 45, is denied.